# Lyttle, Administrator v. Harlan Town Coal Company.

(Decided December 14, 1915.)

## Appeal from Harlan Circuit Court.

1. Master and Servant—Liability of Master for Acts of Servant.— The master is liable for the acts of the servant when the servant is engaged in doing something that he has been directed to do for the master, or something that is fairly within the scope of the service that he has been employed to perform.

2. Negligence—Duty to Exercise Ordinary Care to Anticipate Effect of Act.—A person who commits a tort is liable for all the damages that naturally flow from and are the result of the wrongful act, although he may not at the time have given any thought to or have anticipated that any injurious consequences would follow. He who is responsible for a negligent act must answer for all the injurious results that follow therefrom, by ordinary natural sequence.

3. Children—Duty of Property Owner to Trespassing Children.— The rule in this State is that under ordinary conditions trespassing children occupy the same attitude as trespassing adults, thus imposing on other persons only the duty of exercising ordinary care to prevent injury to them after their peril has been discovered.

4. Children—Duty to Trespassing Children.—If a person knows that young children are in the habit of playing on his premises and is warned that they are liable to be hurt by his method of doing business, it is incumbent upon the property owner to admonish the parents of the children to keep them off his premises or to take ordinary care not to harm them, although they may not be there by his express invitation or consent.

5. Children—Attractive Nuisance Doctrine.—If a person on his own premises has an exposed place that is attractive to and at the same time dangerous for use by children, and he permits them without objection or warning to congregate or play about it, he must keep it in reasonably safe condition for the use to which children of tender years will put it.

CHARLES I. DAWSON, J. G. FORESTER and BROCK & BROCK for appellant.

ZEB A. STEWART, F. F. ACREE and WEBB & BAKER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Jane Lyttle, a child about nine years of age, while playing with other children at the base of a steep hill, was killed by a large rock that was rolled down the side of the hill by Jeff Trail, an employe of the appellee coal

company. In this action against the coal company, brought by her administrator, to recover damages for her death, there was a directed verdict for the coal company, and the administrator appeals.

The trial judge was influenced to order a directed verdict on the ground that the child, at the time she was killed, was trespassing on the premises of the coal company, and her peril was not discovered in time to have prevented the injury that resulted in her death.

The case as made out by the witnesses for the administrator, as we gather it from the record, is substantially as follows: Lyttle and his family, consisting of his wife, Jane Lyttle and two younger children, lived in a little house on the land of a man named Kelly. The land of Kelly adjoined the land of the coal company, and the house in which Lyttle lived was only a few steps from the division line between the Kelly land and the land of the coal company. Lyttle had been living in this house with his family for several months, perhaps a year or more, and as there were no shade trees in his yard or near the house on the Kelly land, his children were in the habit of playing under some shade trees standing at the base of a steep hill on the land of the coal company, a short distance from his house. The accident happened in July, and on this day his children were playing in the shade of these trees, where they had such little articles as children usually amuse themselves with.

The coal company had opened a wagon road on the side of this hill, near its top, some 75 yards up the hill from the trees under which the children played; and when the little girl was killed the weeds and underbrush between the playground and the road hid the children from the view of persons passing along the road. Trail was, and had been for some time, driving a team for the coal company that hauled material over this road from the railroad station to its mine, and as the road was newly made, Trail frequently found it necessary to remove from the road rocks and other obstructions that interfered with its use, and as the easiest way of getting rid of these rocks and obstructions was to pitch them down the hillside from the road, it had been the habit of Trail to do this.

Trail testified that whenever a big rock or other obstruction was found in the road, it was his custom to move it out of the road, and that, pursuing his usual

course and method of removing obstructions from the road, he pitched this large rock, found in the road, and which interfered with the travel, to the hillside just below, and from there it rolled down the steep side of the hill and struck the little girl. He further said that he had been told more than once by his employers "to keep the road up" and "to work the road," although he had never been especially directed to throw rocks or other obstructions out of the road.

From this it is not entirely clear that it was a part of Trail's express duty under his employment to clear the road of these obstructions; but it may fairly be said that doing this was well within the scope of his employment. His instructions "to keep the road up" and "to work it" evidently comprehended the direction to remove from the road any obstruction that interfered with its use by the wagons and teams of the company; and it is well settled law that the master is liable for the acts of the servant when the servant is engaged in doing something that he has been directed to do for the master, or something that is fairly within the scope of the service he has been employed to perform.

We also think that Trail, in throwing this rock from the road to the hillside, could reasonably have foreseen that it would roll down the hill. The hill was so steep that any person of ordinary intelligence could not well help knowing that a large rock would roll down to the base, and, under the momentum thus gained, perhaps farther. With notice of this he is further to be charged with the consequences that an ordinarily careful man might reasonably have foreseen would result from his act.

As said in Kentucky Heating Co. v. Hood, 133 Ky., 383, 22 L. R. A. (N. S.), 588, 134 A. S. R., 457: "A person who commits a tort is liable for all the damages that naturally flow from, and are the result of, the wrongful act, although he may not at the time have given any thought to or have anticipated that injurious consequences would follow. It is no excuse or defense for the wrong-doer that he did not mean to commit any wrong, or did not know that any injury or loss would ensue." Quoting with approval from Sutherland on Damages, vol. 1, sec 16, the court further said: "He who is responsible for a negligent act must answer 'for all the injurious results which follow therefrom, by ordinary natural se-

quence.' \* \* \* Whether the injurious consequences may have been 'reasonably expected' to have followed from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom. \* \* \* There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or non-action. All persons are imperatively required to foresee what will be the natural consequences of their acts and omissions, according to the usual course of nature and the general experience.''

Coming now to the principal question in the case, it is contended with much force by counsel for the coal company that although Trail may have been within the scope of his employment and his negligent act have caused the death of the child, the coal company cannot be held accountable because the child was a trespasser and Trail did not discover her place of peril in time to have avoided the accident by exercising ordinary care.

If the little girl at the time she was killed was trespassing on the premises of the coal company, and should be treated as a trespasser, it is the settled rule of this court that an action would not lie against the coal company for her death. Leaving out of view the "attractive place" doctrine, the rule is that under ordinary conditions trespassing children occupy the same attitude as trespassing adults, thus imposing on other persons only the duty of exercising ordinary care to prevent injury to them after their peril has been discovered. This is a rather harsh doctrine, but it is firmly fixed as the law of this State by numerous decisions, and is also the prevailing rule announced by courts generally: Goodman's Admr. v. L. & N., 116 Ky., 900; L. & N. v. Lodsdon's Admr., 118 Ky., 600; Mayfield Water & Light Co. v. Webb's Admr., 129 Ky., 395; Thompson v. Cumberland Telp. and Telg. Co., 138 Ky., 109; Myer v. Union Light, Heat & Power Co., 151 Ky., 332; Wheeling & Lake Erie R. R. Co. v. Harvey, 77 Ohio State, 235, 19 L. R. A. (N. S.), 1136; Hoberg v. Collins, Lavery & Co., 80 N. J. L., 425, 31 L. R. A. (N. S.), 1064; Walsh v. Pittsburg Railways Company, 221 Pa., 463, 32 L. R. A. (N. S.), 559; Madden v. Boston & Maine R. R., 76 N. H., 379; 39 L. R. A. (N. S.), 1058; City of Shawnee v. Cheek, 41 Okla.,

227, 51 L. R. A. (N. S.), 672; Zartner v. George, 156 Wis., 131, 52 L. R.. A. (N. S.), 129.

So that the right of the administrator to have this case go to a jury and to take it out of the doctrine above set forth must rest, if at all, on the evidence that Trail, and the coal company through him, had notice of the habit of these children to play at the place where the little girl was struck by the rock and killed, and warning of the danger that might follow from rolling rocks down the hill.

There is no evidence that Trail knew at the time he pitched this rock from the road down the hillside that these children were playing at the base of the hill directly under the point from which the rock was pitched, or at any place on the premises of the coal company. But there is evidence that both Trail and the superintendent of the coal company knew that the Lyttle children were in the habit of playing under the trees at the place where the little girl was struck by the rock, and had been warned not to pitch from the road to the hillside below it any large rocks or other things that might roll down the hill and hurt the children.

And, for the purpose of testing the correctness of the ruling of the trial court in taking the case from the jury, we must accept as true the evidence as to notice and warning heretofore set out. But, conceding this, counsel for the coal company argue that the case must be adjudged by the ordinary rules defining the duty and liability of the land owner to trespassers, and contend that there can be no liability here because Trail at the time he pitched this rock did not know of the presence of the children under these shade trees. The rule, however, describing the duty of the property owner to trespassers and limiting his liability to injuries inflicted by the failure to exercise ordinary care after he has discovered the peril of the trespasser, should not, we think, be extended to embrace a state of case in which the owner is under a duty to anticipate the presence of the intruding children at the time and place where the accident happens. If the coal company had not known that these children were in the habit of playing under these shade trees, or if the children had gone there for the first time on the day of the accident, the case would fall directly under the general rule exempting the owner of the premises from liability, as the evidence does not show that Trail

knew the children were at this place when he pitched the rock.

But that is not the case we have. Here the coal company, some time before the accident, knew that it was the habit and custom of these children to play under these shade trees, and it had been warned to take care not to injure them. It further knew the custom of its servant in rolling large rocks down the steep hill at the foot of which these children played; and it could not well escape knowing that this practice put in peril the safety of the children. With this knowledge and notice the coal company did not forbid, so far as this record shows, the children to play on its premises, nor did it warn the parents to keep them off. Under these circumstances, it can hardly be said that they were trespassers in the ordinary meaning of the word as used in the cases defining the duty and liability of land owners to trespassers, or that the coal company only owed them the duty extended to ordinary trespassers. In a sense they were technical trespassers, as they had not been invited on the premises or given express permission to play there. But if a person knows that young children are in the habit of playing on his premises and has notice or warning that they are liable to be hurt by his method of doing business, we think it is incumbent upon the property owner to admonish the parents of the children to keep them off his premises; or to take ordinary care not to harm them, even though they may not be there by his express invitation or consent.

Under conditions like this it would be cruel in the extreme to treat little children like adults and to regulate the duty of the land owner to them by the spirit of indifference that might with much propriety be adopted in dealing with persons of mature years who not only knew they were trespassers, but knew how to take care of themselves. The property owner may not be obliged to keep his eyes open to discover the presence of children on his premises, but when he does discover them habitually intruding at a place that is unsafe for children, the plainest dictates of humanity require that he should do something or say something to save them from probable injury or death.

This is not a modification of the general rule announced in the cases cited that trespassing children and trespassing adults are to be treated alike, but is merely

a new application of what is known as the "attractive nuisance" doctrine, which, we think, may be well extended to embrace the case we have. If a person, on his own premises, has an exposed place that is attractive to and at the same time dangerous for use by children, and he knowingly permits them, without objection or warning, to congregate or play about it, he must keep it in reasonably safe condition for the use to which children of tender years will put it. Bransom v. Labrot, 81 Ky., 638; Union Pacific R. Co. v. McDonald, 152 U. S., 262, 38 L. Ed., 434. This principle has been engrafted into the law as a humane exception to the general rule that the owner of premises is under no duty to make them safe for the use of trespassers or ordinary licensees. Or, as said by this court in Indian Refining Co. v. Mobley, 134 Ky., 822:

"A licensee in entering upon the premises of another does so at his peril, the owner of the premises being liable only for injuries resulting from willful acts. The only exception in the application of the rule announced is in that class of cases where one owning premises in a locality where children are apt to congregate places thereon something attractive to children and dangerous to them if meddled with, without taking steps to warn and keep the children out of danger. In cases of this character, where a recovery has been allowed, it has not been upon the ground that the company has been guilty of any positive negligence, but because of the fact that the children injured are too young to appreciate the danger, and the law throws around such its protecting care because they are not able to take care of themselves, and imposes upon the owner of such premises the duty to take such reasonable precaution as the circumstances will admit of to protect them from injury while playing upon such premises."

Now if the Harlan Coal Company could be held liable if this child had come to its death by an injury received through the use of some attractive but unsafe place on its premises, where these children were in the habit of playing with the knowledge and consent of the coal company, there seems to us no sound reason why equal liability should not attach to it under the facts of this record. These children, of course, were too young to be guilty of contributory negligence. They did not know or appreciate that they would come to any harm in play-

ing under these trees where they had been in the habit of playing with perfect safety. The coal company did not object to their use of its premises. It did not do or say anything that would give the parents notice that the children might get hurt, nor did it attempt in any manner to keep the children away.

The suggestion is made that the parents of these children were negligent in permitting them to play on the premises after the father discovered that it was customary to roll rocks and other objects down the hillside from the road. There would be much force in this attempt to charge the parents with imputed negligence except for the fact that when the coal company and its servant Trail were notified by the parents of the habits of the children and the danger that might come to them from rolling rocks down the hill, they were not notified to keep the children off the premises. On the contrary, we may infer from the evidence that the parents understood that it was entirely agreeable to the coal company that the children should continue to play under these trees as they had been doing, and that some care would be taken not to injure them by rolling stones.

If the facts before us are put in issue, we think it is for a jury to say (1) whether the coal company, with knowledge of the custom, permitted the children, including the little girl who was killed, to play on its premises and was warned of the danger of rolling rocks down the hill; (2) whether in pitching the rock from the road to the hillside Trail was acting within the scope of his employment; (3) whether in the exercise of ordinary care he might have reasonably expected that the rock would roll to the base of the hill or near the place where the children were in the habit of playing; and (4) whether the coal company should not be charged with notice of the presence of the children at the place they were accustomed to play and have exercised ordinary care to have prevented injury to them.

Wherefore, the judgment is reversed, with directions for a new trial consistent with this opinion.