## LAMAR LYNDON v. WAGNER ELECTRIC MANU-FACTURING COMPANY, Appellant.

### Division One,. December 2, 1920.

1. **CONTRACT:** Extension: Harmless Error. It is error to exclude a letter by which the defendant's option to accept the contract sued on was extended seven months; but if within the extended time defendant neither accepted nor rejected the contract, its exclusion was harmless error.

2. ———: Termination. Where the contract provided that the defendant might terminate the contract at the end of two years, it is not error to exclude a letter by which defendant attempted to terminate it at the end of eight months. And for like reason it is not error to exclude the answer of defendant, by which it attempted to terminate the contract one year after its date, to a former suit to recover a sum which defendant by the contract agreed to pay within the year.

Appeal from St. Louis City Circuit Court.—*Hon. Karl Kimmel,* Judge.

AFFIRMED.

*Albert Blair* and *Charles A. Houts* for appellant.

(1) The contract of March 2, 1912, and as modified by the contract of April 12, 1912, gave the defendant the right to elect between operating as a licensee, and making an outright purchase of the patent. There is no evidence that defendant ever exercised its right of election, and until it did so elect there could be no liability on its part to pay either the royalty provided for, or the purchase price. (2) Paragraph two of the contract of March 2, 1912, is ambiguous in that it impliedly, though not expressly, gave the Wagner Company the right to withdraw from the contract, if within 40 days from its date, its investigation of the validity of the

patent produced unsatisfactory results, Because of this ambiguity it was the duty of the court, in ascertaining the true meaning of the paragraph in question, to apply the following rules of law: (a) Whatever is implied in a contract is as much a part of the contract as though expressly set out. Southern Ry. Co. v. Franklin Railroad, 44 L. R. A. 297; 6 R. C. L. p. 856; Lawler v. Murphy, 8 L. R. A. 133; Driver-Harris Co. v. Driver, 70 N. J. Eq. 34; Driver-Harris Co. v. Driver, 71 N. J. Eq. 271. (b) The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. 6 R. C. L. p. 838; Kauffman v. Dader, 108 Fed. 171. (c) The meaning of the paragraph in question being doubtful, plaintiff was bound by the interpretation which he and Mr. Layman put upon it. 13 C. J. pp. 523, 524; Farley v. Pettes, 5 Mo. App. 262; Counts v. Medley, 163 Mo. App. 555; Bruner v. Wheaton, 46 Mo. 363. (3) Under a proper interpretation of paragraph two of the contract, the defendant was only obligated to make the first payment of $750 if upon investigation it found the patent to be of satisfactory validity. Defendant's refusal to pay the $750, until it secured the modifications of the original contract, which are embodied in the contract of April 12, 1912, and its payment of that sum, upon the execution of the contract of April 12, 1912, furnished a sufficient consideration for the modifying contract of April 12, 1912. Adams v. Helm, 55 Mo. 468. The mutual agreement of the parties to modify the original contract furnishes a sufficient consideration for the modified contract. Domenico v. Alaska Packers Assn., 112 Fed. 554; Welsh v. Mischke, 154 Mo. App. 728; Cannon-Weiner Co. v. Boswell, 117 Mo. App. 474; Schneider v. Chew, 157 Mo. App. 354; Carman v. Harah, 182 Mo. App. 365. (4) The plaintiff sued on the contract of March 2, 1912. This contract was modified in important respects by the contract of April 12, 1912. As plaintiff did not plead the modi-

fied contract, he cannot recover in this action, even though, under a proper pleading, he might be entitled to relief. Bagnell Timber Co. v. Ry. Co., 180 Mo. 463; Veach v. Norman, 109 Mo. App. 387; Lanitz v. King, 93 Mo. 519; Carman v. Harah, 182 Mo. App. 365; Whitlock v. Beach, 174 Mo. App. 428; Goller v. Oil Co., 179 Mo. App. 48. (5) Under the terms of the original contract, as modified by the agreement of April 12, 1912, the obligations of the Wagner Company terminated on the second day of October, 1912, unless at that time it elected to go forward with the contract, and made the payment of one thousand dollars, as provided in the modified contract. The Wagner Company did not elect to go forward; refused to pay the one thousand dollars, and notified plaintiff of its determination to withdraw from the contract, and that it would cause a reassignment of the patent to be made. Its obligation of the contract thereupon terminated. (6) In addition to the rights of withdrawal provided by the modified agreement of April 12, 1912, paragraph 8 of the original contract, also gave the Wagner Company the right to terminate the agreement at the expiration of two years. It so desires. Prior to that date it notified the plaintiff of its determination to abandon the contract, and continued notice of its abandonment of the contract was contained in its answer to a suit brought by the plaintiff for the one thousand dollars referred to in paragraph two of the original contract, and in the modified agreement of April 12, 1912, which suit was pending and being contested by defendant at the expiration of the two-year period referred to in paragraph two of the original contract.

*Rippey & Kingsland* for respondent.

(1) The right of an inventor and patentee under the patent laws of the United States is to exclude others from making, using or selling the physical embodiments of the subject-matter of the invention, and this right is

a property right vested by law in the inventor and patentee. Jewett v. Suspender Co., 100 Fed. 647; Victor Co. v. The Fair, 123 Fed. 424; Rubber Tire Co. v. Rubber Co., 154 Fed. 363; Blount Mfg. Co. v. Yale & Towne Mfg. Co., 166 Fed. 558; Walker on Patents (5 Ed.), p. 185, sec. 151. (2) A license by an inventor or patentee granting a right to make, use and vend the invention is a privilege of value sufficient to constitute a consideration for a covenant upon the part of the licensee to pay a royalty or rental charge for the enjoyment of the privilege. Kelly v. Porter, 17 Fed. 519; Wilson v. Nentges, 26 Minn. 288; Sherman v. Champlain, 31 Vt. 162; Walker on Patents (5 Ed.), p. 366, sec. 307. (3) A license agreement executed and delivered is deemed to continue in force and the licensee is chargeable with the royalty or rental fee until the license is rescinded, and the license can only be rescinded in the manner and within the time prescribed by the contract. Ford v. Dyer, 148 Mo. 528; White v. Lee, 3 Fed. 222; Dare v. Boylston, 6 Fed. 493; McKey v. Lupton, 95 Fed. 291; Holmes v. McGill, 108 Fed. 238; Chemical Co. v. Johnson, 203 Fed. 993; Hiner v. Aldrich, 255 Fed. 785. (4) The contract of March 2, 1912, is clear and unambiguous and it therefore follows that extrinsic evidence is inadmissible to contradict, add to, subtract from, or vary the terms of the contract. 9 Cyc. 590; 17 Cyc. 567; Davis v. Shafer, 50 Fed. 764. (5) The letter of April 12, 1912, did not constitute a modification of the contract of March 2, 1912, and therefore was properly excluded from evidence for the reasons that (a) It does not on its face purport to be a modification; and (b) There was no consideration for a new and modified contract. 9 Cyc. 349; Lingenfelder v. Brewing Co., 103 Mo. 578. (6) The question of interpretation and construction of the legal effect of the letters offered to show that the contract has been modified or rescinded should not be submitted to the jury. Interpretation and construction of the legal effect of written statements is a matter solely

for the court. Ford v. Dyer, 148 Mo. 528; Wolff v. Campbell, 110 Mo. 120.

WOODSON, J.—This suit has instituted by the plaintiff in the Circuit Court of the City of St. Louis against the defendant, to recover seven installments of $1500 each alleged to be due him as royalties under a lease of license dated March 2, 1912, executed by the plaintiff to defendant. The trial resulted in a judgment for the plaintiff for the amounts sued for, plus interest, which amounted to $1529.50 each. After moving- unsuccessfully for a new trial the defendant appealed the cause to this court.

The facts of the case are substantially as follows:

The plaintiff was an electrical engineer of high standing in his profession, and as such was connected with the Edison Electric Company, of New York, and the defendant was a Missouri corporation organized and existing under the laws of this State, and was engaged in the manufacture and sale of electric motor appliances in the City of St. Louis, The plaintiff was the sole inventor and patentee of a certain system of propulsion and battery-charging of electric vehicles, covered by United States patent issued to him, dated March 20, 1906, and numbered 815,360. On March the 2nd, 1912, the patentee, the plaintiff, and defendant entered into the following contract or license, whereby the former authorized the latter to manufacture and sell the said device, (Formal facts omitted): "This agreement made this 2d day of March, 1912, by and between Mr. Lamar Lyndon, a resident of New York City, party of the first part, hereinafter called 'Lyndon,' and the Wagner Electric Manufacturing Company, a corporation of Missouri, with principal offices in the City of St. Louis, Missouri, party of the second part, hereinafter called the 'company.'

"Witnesseth: Whereas, said Lyndon is the inventor and owner of United States Letters-Patent No. 815,360 of March 20, 1906, referring to system of propulsion and

285 Mo.—6

battery-charging of electric vehicles; and whereas the Company desires to undertake the manufacture of the system involved in said patent. Now, therefore, in consideration of the agreements hereinafter set forth, and the sum of $1 paid by the Company to said Lyndon, receipt of which is hereby acknowledged, the parties agree as follows:

"1. The said Lyndon agrees that the Company may elect between the privilege of purchase outright of the said patent or operating thereunder an exclusive license on the following terms:

"(a) *Purchase Outright.* Within one year from the date that the Company offers for commercial sale an electric machine combining the functions of a driving motor for a vehicle and a convertor for charging the battery of said vehicle from the alternating current source of supply, the Company may acquire full ownership and title to said patent upon the payments of twelve thousand dollars. If the Company does not exercise this privilege within said period of one year, the privilege of purchase shall continue indefinitely during the life of the said patent subject to the stipulation that $2000 shall be added to the purchase price for each period of six months thereafter or fraction thereof until the total price of purchase shall have attained the total sum of $24,000, at which sum of $24,000 the price shall continue during the life of the patent. It is especially agreed that the purchase price shall be reduced by the amount of any sums paid to said Lyndon in royalties or otherwise.

"(b) *Royalties.* It is agreed that the Company is manufacturing at this time three standard sizes of direct current motors for driving electric vehicles, rated at 12, 14 and 16, respectively. Should the Company not elect to purchase outright, as provided in clause 'A' above, it may operate as an exclusive licensee under said patent hereinbefore referred to on the basis of a royalty

of $4, $5 and $6 per machine, respectively, for machines built under said patent and delivering as motors an output equivalent to the said 12, 14 and 16 frames. If the Company shall develop additional sizes of·equipment, it is agreed that a royalty per machine shall be arrived at for each machine fairly in proportion to the royalties stipulated for the frames mentioned in this paragraph.

"2. It is agreed that the company shall have an interval of approximately 30 days to investigate the validity of said Patent 815,360. At the end of that time the Company shall pay Lyndon the cash sum of $750. It is the spirit of this paragraph that the Company will immediately and diligently make the investigation herein described, and if it does not receive it within the period of time prescribed an extension of 10 days is hereby agreed to, At the end of seven months from the date of this agreement, the Company shall pay an additional cash sum of $1000; both of said sums of $750 and $1000, respectively, are paid irrespective of commercial development and in the nature of a cash sum in consideration of this contract.

"3. It is mutually agreed that the Company shall not pay a minimum royalty during the first two years of this contract, but that for the third year under this agreement, assuming that the Company elects to operate under the exclusive licensed provisions in this contract, and for each year thereafter, the Company shall pay a minimum royalty of $3,000 per year. Said royalty to be paid in advance, half in January and the balance in July of each year, respectively.

"4. Should the Company elect to operate on the royalty plan, it is agreed that any royalties over and above the minimums provided for in paragraph 4, shall be paid to the said Lyndon semiannually, as soon as the Company can reasonably make up accounts therefor. It is understood and agreed that accounting, either for minimums or for royalties in excess of minimums, shall be made and the sums due the said Lyndon paid within 30 days from the time stipulated in this agrement.

"5.   It is the spirit and intent of this contract that the said Patent 815,360, is controlling in the art for the the purposes covered by the claims thereof.  If it should prove, in the course of time and the operations under this agreement that said patent is not controlling, then the Wagner Company may apply for a readjustment of the purchase price figures and royalties hereinbefore stipulated.   And it is agreed that such purchase price and royalties shall be pro-rated to a proper measure of the protection secured by the patents.  If there should be any difference between the parties hereto in respect to proper rerating,  the question shall be arbitrated in the usual manner.

"6.   The Wagner Company undertakes to assume the cost of any patent litigation arising in  connection with said patent. The said Lyndon agrees to co-operate with the Company in any litigation offensive or defensive, in which the Company may become involved.  There is nothing, however, in this contract which obligates the Company to engage in patent litigation unless it so elects.

"7.   *Improvements on this Patent.*   If the said Lyndon agrees to deliver to the Company by assignment in improvements he may make upon said patent 815,360 during .the life of said principal patent, the Company, however, agrees to pay all costs of taking out United States Letters Patent of said improvements.   The said Lyndon agrees that with respect to improvement patents provided for under this agreement, that the Company may also have the right to said improvements in territory under  control of the United States, as the Philippine Islands, etc., the Company assuming to pay the costs of securing protection in such territory.

"8.   If, at the expiration of two years from the date of this agreement, the Company desires to terminate the agreement, all rights conveyed hereunder to the Company by Lyndon are to revert to Lyndon and the Company hereby agrees to make such re-assignment of said rights and patents; and further to furnish to said Lyn-

don a complete set of such drawings and designs as have been made by the Company for the construction of machine under said Patent No. 815,360.

"In witness whereof, the parties hereto have fixed their names this 2nd day of March, 1912."

By paragraph three of the foregoing contract it was provided that after two years from its date, if the Wagner Electric Manufacturing Company elects to operate under the exclusive license provisions of the contract it should pay to Lyndon a minimum royalty of $3,000 per year, payable in semi-annual installments in January and July of each year. By this suit plaintiff seeks to recover seven such semi-annual installments alleged to have fallen due, commencing January 1, 1914, up to and including January 1, 1917, aggregating $10,500.

Plaintiff, to sustain the issues on his part, introduced in evidence, the contract above set out. He next introduced in evidence an assignment to the defendant of the patent referred to in the contract, which assignment concluded with the following paragraph:

"This assignment is, however, made subject to the terms and conditions of the agreements made and entered into between me, my heirs and assigns, and the said Wagner Electric Manufacturing Company, its successors and assigns. Date, March 2, 1912, and April 12, 1912."

Plaintiff himself was the sole witness in his behalf. Upon the subject of whether or not the Wagner Electric Manufacturing Company had availed itself of the right given it by the contract to elect to purchase or to elect to operate as a licensee, plaintiff himself testified:

"Mr. KINGSLAND (continuing): Q. Did the company avail itself of the privilege of purchasing the patent outright, or did they elect to proceed under the patent as a licensee?

"Mr. HOUTS: I object to that as immaterial.

"THE COURT: That is one of the things, whether they availed themselves of the privilege—

"Mr. Kangsland: I will confine the question; therefore, as to whether the defendant company availed themselves of the right to purchase outright.

"The Court (addressing wittness): You may answer that question.

'To which ruling of the court, the defendant, by its counsel, then and there duly excepted, and still continues to except.

"The Witness: A. I never understood that it was the intention of the company to purchase outright.

"Mr. Houts: I object to that and move that it be stricken out.

"The Court: The objection is sustained, and the motion to strike out is sustained. (Addressing witness): You are asked whether or not they purchased this patent outright; you can answer by saying 'Yes' or 'no.' Did they ever purchase this patent outright from you? A. I have never been sure, your Honor; they had the option of doing two things.

"The Court: Q. Did you ever get $24,000 for this patent? A. Never, they never purchased it.

" 'The Court: Q. They never purchased it? A. No.

"The Court: Q. What is the date of that assignment? A. April 12, 1912.''

On cross-examination the plaintiff testified that his patent had been issued to him in 1906; that no complete machine had ever been manufactured under the patent; that after the contract with the Wagner Company no machine had ever been built to his knowledge.

For the defendant, Mr. W. A. Layman, president of the Wagner Electric Manufacturing Company, was the only witness. He testified that he himself dictated the contract of March 2, 1912, in Mr. Lyndon's office. After the execution of this contract Mr. Layman returned to St. Louis and started the construction of an experimental machine. Prior to that date, so far as Mr. Layman, was aware, no machine had been built. Mr.

Layman also started his patent attorney, E. E. Huffman, upon an investigation of the patent. Under paragraph two of the contract of March 2, 1912, the Wagner Company was granted a total of forty days within which to investigate the validity of the patent. At the end of that time Mr. Layman went to New York and told Mr. Lyndon that the investigation was incomplete and unsatisfactory. Up to that time no payments had been made to Mr. Lyndon.

The defendant offered to show by the witness Layman what took place at the meeting between him and the plaintiff on April 12, 1912, but this the court excluded upon objection by the plaintiff. Defendant's offer was as follows: ''I wish to offer to prove that on the occasion referred to by the witness, the witness told the plaintiff that the validity of the patent was not *sustained by the investigation* which he had caused to be made by his patent attorneys, and that further time was desired for the purpose of making an investigation, and that he would not pay the $750 unless the contract was modified so as to permit the Wagner Electric Manufacturing Company to withdraw from the contract and terminate the contract by the time the next payment of a thousand dollars was to be paid under the terms of the original contract, and that thereupon the plaintiff agreed that it should be modified in the parts covered by a letter dated on that dated, drawn up at that time;'' and the letter was as follows (Signatures omitted):

''Mr. Lamar Lyndon,

''60 Broadway,

''New York City.

''Dear Sir:—

''In accordance with the terms of our contract of March 2nd and your supplementary letter of the same date, pertaining to U. S. Patent No. 815,360, I hand you herewith accepted sight draft on our Company in the sum of $750. This covers the first payment provided for in Paragraph 2 of our agreement.

"You will understand by this letter and this payment that the Wagner Company avails itself of the licenses, privileges, etc., under U. S. Patent No. 815,360, contemplated and covered by our agreement of March 2. We are proceeding actively with the design and manufacture of an experimental equipment and expect to have the same on test in approximately sixty days. It was a part of our understanding in connection with the agreement of March 2nd, that it might be redrafted as to language, form, etc., by our attorneys, if they deem it desirable to do so.

"I am leaving for Washington to-day and if in the opinion of our counsel, Mr. Melville Church, such redrafting is desirable, I will present to you a redrawn form of agreement for your signature early during the coming week. Under the terms of the agreement of March 2d, next payment to you on account of this contract in the sum of one thousand dollars will be due and payable October 2, 1912, providing the Wagner Company at that time desires to go forward with the agreement. If at that time, the Wagner Company should desire to elect to withdraw from further obligations under the contract, it is understood and agreed that they may do so, forfeiting, however the sum of the payment of seven hundred and fifty dollars, tendered to you with this letter.

"While in Washington, I will have Mr. Church draft a brief license agreement for recording at Washington, as required under the terms of the United States Patent Law."

The testimony offered to be introduced was excluded by the court over defendant's objection. The court also excluded the letter of April 12, 1912. The defendant also offered to show by the witness Layman that the defendant had at no time built or sold any machine under the patent in question, and had at no time exercised any rights over the patent; and that the defendant had done nothing more than build an experi-

mental machine, which experimental machine was not a success. Objections to this offer of proof having been made, the court announced its ruling in the following language:

"The Court: That objection will be sustained, because the transaction to this day shows that the right of election is still open."

"The defendant also offered to show that in October, 1912, witness had a conversation with the plaintiff in which he told plaintiff that a machine constructed under the patent was not a commercial success, and that following this conversation defendant wrote a letter to the plaintiff, dated, November 9, 1912, as follows:

"We have decided to avail ourselves of the privilege accorded under our letter of April 12, 1912, and also in accordance with the conversations of Mr. Fynn and myself with you in New York City, October 18th, and terminate the agreement with you with respect to Patent No. 815,360. For this reason, your draft of $1,004.16 which would otherwise have constituted a second payment under the agreement, was ordered returned to you yesterday.

"I will ask your attorney to prepare a proper form of re-assignment to you of Patent No. 815,360 and will forward this to you in the near future."

Plaintiff objected to the introduction of this letter and to the offer of proof, and the objection was sustained. Defendant also offered to show by the same witness why a re-assignment of the patent at that time had not been made to the plaintiff. The plaintiff objected and the objection was sustained by the court. Mr. Layman testified that the Wagner Company had at no time elected either to operate under the license provisions of the contract or to purchase the patent. The defendant also offered in evidence its answer in a suit filed on the 13th day of March, 1913, by the plaintiff against the defendant, being Cause No. 83,059, in the Circuit Court of the City of St. Louis, in which answer the defendant notified

the plaintiff that it had terminated and abandoned the contract, and was claiming no rights under it. To this offer of proof the plaintiff objected, and the court sustained the objection.

The defendant also offered to introduce in evidence a letter from the plaintiff to the defendant, dated March 6, 1912, as follows (Formal parts omitted):

"This is to request that you will kindly have your attorneys expedite the search you propose to have made in connection with my patent on automobile motors, and to bring the matter to as speedy a conclusion as possible.

"My reason for asking this, is that I have to-day received a favorable letter from the other parties who were considering the purchase of this patent. If you should decide not to consummate the agreement, I would like to sell it to them; on the other hand, I do not desire that they shall expend any time or money in an investigation if it would prove fruitless for them to do so. The terms of our agreement give us 40 days to conclude the matter, but in view of this communication to-day, I trust you will do everything in your power to reach your decision as early as possible." This letter was also excluded upon plaintiff's objection.

At the conclusion of the testimony the court gave a peremptory instruction directing the verdict for the plaintiff for the full amount sued for with interest.

I. Counsel for appellant first insists that the trial court erred in its ruling excluding the letter from Mr. Layman, the president of the company, to Mr. Lyndon, the patentee of the electric device mentioned, dated April 12, 1912, set out in the statement of the case. In our opinion that insistence is well grounded, and consequently the ruling of the circuit court in that regard was erroneous. That letter was written within the forty days within which the company had to accept or reject the contract dated March 2, 1912. In said letter of April 12, 1912, the company practically

rejected the contract, and so stated, unless the plaintiff would extend the time to the defendant to accept or reject the contract until October 2, 1912, the date when the $1000 mentioned in the contract, paragraph 2, was to become payable; and in which letter the company enclosed to plaintiff a draft for $750, the amount of the first payment due under the contract.

The plaintiff, in accepting the letter of April 12, 1912, and the draft for $750 therein enclosed, thereby, by implication, assented to the extension of the time in which the defendant might exercise its option to accept or decline to accept the contract of March 2, 1912. In our opinion there can be no reasonable doubt but that by agreement of the parties, the time to accept or reject the contract of March 2, 1912, was extended to October 2, 1912, which fact the defendant had the right to show by the offered evidence, which, by the court, was excluded upon the objection of the plaintiff; that was error.

But in the light of the remainder of the record bearing upon that question, we are unable to see in what possible way that error injured the defendant. The record further shows that the defendant did not accept or reject the contract within the time of extension before mentioned, to-wit, October 2, 1912, and did not until November 9, 1912, more than a month after the expiration of the time in which the defendant had to accept or reject it. So we are of the opinion that the error before mentioned was harmless and did the defendant no harm.

II. Counsel for defendant also contend that the trial court erred in excluding the letter of Mr. Layman, the president of the company, to Mr. Lyndon, the plaintiff, Termination dated November 9, 1912, terminating the conof Contract. tract of March 2, 1912.

In our opinion this contention is not well grounded, for the reason that, by paragraph 8 of the contract, it is provided that: "If, at the expiration of two years

from the date of this agreement" it may so do, etc. While the said letter of November 9, 1912, undertakes and attempts to terminate the contract of March 2, 1912, yet that attempt was ineffectual for the reason that said attempt was made before the two years had expired, mentioned in said paragraph 8 of the contract, and therefore, the attempt was premature and not binding upon the plaintiff. There was no error in excluding said letter.

For the same reason the court excluded the letter of defendant to the plaintiff dated November 9, 1912, as before stated.

The court also properly excluded the answer of the defendant filed March 13, 1912, in a suit instituted by plaintiff against the defendant to recover the $1000 mentioned in paragraph 2 of the contract. That answer was filed practically one year before the two years before mentioned, had expired, and therefore long prior to the time defendant had the right to terminate the contract.

Finding no error in the record, the judgment of the circuit court is affirmed. All concur.