## Meredith v. Fehr et al.

(Decided Feb. 14, 1936.)

ROBERT E. HOGAN and LUTHER M. ROBERTS for appellant.

L. R. CURTIS and CRAWFORD, MIDDLETON, MILNER & SEEL-BACH for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was brought to recover damages for injuries sustained by the appellant (plaintiff below), an infant thirteen years of age, from falling into a cellar situated on a vacant lot of the appellee Fehr, in the city of Louisville, from which a large and dilapidated old brick structure was then, and had been for some months before, in the course of being dismantled and razed, and by reason of which the lot, at the time of the accident, was left strewn with many large piles of debris and rubbish scattered here and there and along the walls of certain large basements or cellars, left open in the lot through the removal of the upper parts of the buildings covering them.

The suit was brought against the property owner, Frank Fehr, charging him with liability for appellant's injury, by reason of his alleged negligence in thus leaving and maintaining on his lot this open basement as constituting an "attractive nuisance," open, dangerous and attractive to appellant and the other neighborhood children, and which lot, it is charged, the appellee knew they frequented and used as a playground. Also the appellee Tabb, doing business as the

Tabb Storage Warehouse & Freight Transfer Line, was named and sued as codefendant in the action, upon the ground of respondeat superior for the wrongful act of his servant or negro teamster in throwing a rock at appellant as he ran along the side of the open cellar, which, it is claimed, caused him, when dodging it, to fall into the cellar and sustain the injuries complained of.

The circumstances and facts attending the happening of plaintiff's accident, the concurring causes thereof, and the resulting injury complained of, for which appellees are sued as liable in damages therefor, are shown by the record to be as follows:

In March, 1933, the appellee Frank Fehr, the owner of the lot in question, contracted with one R. R. Riddell to dismantle and raze the outer and inner walls of the large old brick structure, known as the old Senn & Ackerman Brewing Company, located on the south side of Main street between Seventeenth and Eighteenth Streets, Louisville, Ky. This old building ranged in height from two to five stories and covered and enclosed the entire lot, fronting some 300 feet on Main street and extending back some 200 feet to its southern property line on Pirtle alley and from Eighteenth street on the west to its east wall abutting on an alleyway, some 100 or more feet west of Seventeenth street.

Further, it appears that Riddell, when entering upon the razing of this building, obtained a city permit authorizing its dismantling and that the wrecking work progressed under the supervision of the city building inspector, as required for safeguarding the public from risk and exposure to injury.

Within the large inclosure of the building's outer walls, standing upon the boundary lines of the lot, were numerous brick partitions, separating the old brewery into various departments. On the southwest corner of the lot there stood its power house, and adjoining that on the east was an ice house, and yet further on the east side of the lot there were now left open the old distilling cellars, the lower and deeper one of which was situated at the southeast corner of the lot, into which it is shown that the plaintiff while running along its wall upon the occasion in evidence accidentally fell and received his injury.

Such we find by the record was the condition on September 25, 1933, of this rubbish strewn lot with its open cellar pits, extending along its eastern portion, when Charles Meredith, the thirteen year old plaintiff and several of his companions gained entrance thereto through the half dismantled old power house, standing upon the lot's extreme southwest corner, where fortified behind its partially wrecked walls, the boys, in anticipation both of fun and mischief, ventured to throw chunks of plaster and bricks, plaintiff states, at a team of mules (belonging to the appellee transfer company), which they discovered passing near by along the alley, followed by the negro teamster in charge of them. This, their well-laid plan of sport, however, like many other plans of both mice and men, went quickly awry, due to the unsuspected ugly mood and temper of the mules' attendant, who, scenting strife in the flying missiles of the boys ambushed attack, at once assumed the offensive by loudly uttering threats of reprisal and laying down a return barrage of flying rocks.

This unexpected turn in events so frightened the warring teamster's young assailants that they forthwith, being a mobile force, sought safety in panicky flight, and hied themselves away, over and across the lot's rough terrain of brick and mortar piles, in an eastwardly course, leading by the open cellar pits, in order to quickly reach their much-desired objective of a point of exit and escape they knew was to be found on the eastern side of this battlefield and thus avert the retributive justice threatened, if caught by this irate nemesis, so determinably pursuing them. However, in this hope they reckoned without their foe, for he, all unsuspected by them, while they were executing their hurried "get-a-way," "took rounders" on them, by so maneuvering a reverse order of pursuit as to head them off just as appellant was staging his risky, thrilling run over and along the rubbish covered side walls of the open cellar, where he again discovered the avenging specter of his doughty foe in the very act of hurling, with such unerring aim, yet another rock at his head, as to force him, to avoid the blow, to duck and dodge, which caused him to stumble and fall into the deep cellar pit and fracture both legs.

This, the plaintiff's version of his harrowing encounter with the negro driver, and his chasing and rocking him upon the occasion of his fall and injury, alleged to have been a concurrent cause of it, is all too modestly denied by the teamster, who declined to share in the brief honors of the skirmish or to risk his job by confessing his dramatic acting of such Talus-like exploits.

However, considering this detailed matter from the plaintiff's angle, as to its bearing and effect upon the questions presented by this appeal, the plaintiff substantially so reports the facts and circumstances of his fall, and states that he was first thrown at by the negro, when he and his companions were prowling about in the old power house, whereupon they fled therefrom easterwardly across the lot, by way of the open cellars, not because they were "attractive places," to him or because he was ignorant of the risk and danger assumed in his running along their rubbish littered top walls, but that, while realizing the danger, he chose such way out as affording the best available means of escaping the angry negro; that he at the time knew and realized the danger of the open pit into which he fell, but that he also knew that the other way out by a Main street opening was equally dangerous.

Upon such evidence the court so instructed the jury as to give plaintiff, as an infant of tender years, the advantage of recovering under the "attractive nuisance" doctrine.

Upon this evidence and under such instructions the jury found against the plaintiff, who now assails the propriety of both the judgment entered upon the directed verdict for the Tabb Transfer Co. and that entered upon the jury's verdict in favor of appellee Fehr upon many and numerous grounds.

Some nineteen assignments of error are here presented, but we will only consider such of them as appear to be seriously advanced by the appellant as impress us as containing some semblance of merit justifying our discussion of them.

We will first consider the objections urged against the instructions given, in which it is insisted the court

erroneously presented the "attractive nuisance" doctrine to the jury.

This court has repeatedly announced its adoption of, and has applied the humane principle of, this doctrine, which imposes upon the property owner the duty of safeguarding infant trespassers upon his property from hurt and injury befalling them through his negligently maintaining thereon what are termed "attractive nuisances," consisting of dangerous instrumentalities or "attractive places" which are calculated to attract and lure infants of tender years, ignorant of their dangerous nature and proper use, as to "a trap" set for their ensnarement and hurt.

However, except for this special liability imposed upon the owner, in the case of maintaining an attractive nuisance upon his premises, an infant trespasser occupies the same position as a trespassing adult, and a landowner who injures such an infant is liable only in case of his being negligent after discovering the infant trespasser's position of peril. As said in the case of Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S. W. 519, 520:

> "Leaving out of view the 'attractive place' doctrine, the rule is that, under ordinary conditions, trespassing children occupy the same attitude as trespassing adults, thus imposing on other persons only the duty of exercising ordinary care to prevent injury to them after their peril has been discovered. This is a rather harsh doctrine, but it is firmly fixed as the law of this state by numerous decisions, and is also the prevailing rule announced by courts generally."

Com. v. Henderson's Guardian, 245 Ky. 328, 53 S. W. (2d) 694; Goodman's Adm'r v. L. & N. R. Co., 116 Ky. 900, 77 S. W. 174, 25 Ky. Law Rep. 1086, 63 L. R. A. 657; Louisville & N. R. Co. v. Logsdon's Adm'r, 118 Ky. 600, 81 S. W. 657, 26 Ky. Law Rep. 547; Mayfield Water & Light Co. v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 33 Ky. Law Rep. 909, 18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469.

However, under the "attractive place" doctrine, the status of the trespassing infant and the excusing of his contributory negligence in dealing with the attractive and dangerous instrumentality is based

upon the theory that, because of the tender age and lack of experience of the errant child, he does not realize or have knowledge of the risk and danger to be encountered when dealing with, or venturing upon, the dangerous instrumentality or attractive place. In such case the maintenance without notice or warning given of such an attractive nuisance by the owner upon his property is held to constitute a negligent disregard of the protective duty owed by him to trespassing children too young to realize the danger of the attractive instrumentality which lured them thereto and for whose hurt, so caused, the owner is made liable. However, this liability is imposed as for negligence upon the landowner only where he has breached the duty resting upon him, where maintaining an attractive nuisance upon his premises, of warning and prohibiting infant trespassers, known by him to assemble and play upon his premises, from entering thereon. Hardy v. Missouri Pac. R. Co. [C. C. A.] 266 F. 860; Martino v. Rotondi, 91 W. Va. 482, 113 S. E. 760; Central of Ga. R. Co. v. Robins, 209 Ala. 6, 95 So. 367; Branan v. Wimsatt, 54 App. D. C. 374, 298 F. 833; Fitzpatrick v. Rose Donahue Realty Co., 151 Minn. 128, 186 N. W. 141; Ramsay v. Tuthill Building Material Co., 295 Ill. 395, 129 N. E. 127; United Zinc & Chemical Co. v. Britt, 258, U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615) 36 A. L. R. pp. 1 to 294, inclusive; 45 A. L. R. 990; Lucas v. Hammond, 150 Miss. 369, 116 So. 536, 60 A. L. R. 1427; Kopplekom v. Colorado Cement Pipe Co., 16 Colo. App. 274, 64 P. 1047, 54 L. R. A. 284; Wheeling & L. E. R. Co. v. Harvey, 77 Ohio St. 235, 83 N. E. 66, 19 L. R. A. (N. S.) 1152, 122 Am. St. Rep. 503, 11 Ann. Cas. 981; L. R. A. 1917F p.105; Loftus v. Dehail et al.) 133 Cal. 214, 65 P. 379. However, where no duty is owing, there can be no culpable negligence, as there cannot be a negligent performance of a nonexisting duty. Walker's Adm'r v. Potomac, F. & P. R. Co., 105 Va. 226, 53 S. E. 113, 4 L. R. A. (N. S.) 80, 115 Am. St. Rep. 871, 8 Ann. Cas. 862.

Here it is admitted by the plaintiff infant, 13 years of age, that he knew the place to which he ran on this occasion, where he received his injury, was of a dangerous character, but that he none the less ran to or by the open pit, not because it was to him an

"attractive place," or an accustomed play ground, but because the way out leading by the cellar afforded him, as he thought, the best means of escaping the pursuing negro. Also there was evidence, given by defendant's witnesses, that warning signs had been displayed about the lot, fences had been built to keep out the public and trespassing neighborhood children, including plaintiff, who, it was testified, had been driven off the lot time and time again. Such being the evidence and showing of the record, it would appear to follow that by such admissions of the plaintiff, showing that, though an infant, he was none the less conscious of the danger risked by him in running by the cellar pits, as well as defendant's evidence tending to show his due discharge of the imposed duty of prohibiting trespassing children from gathering upon his lot, even if the temporarily uncovered cellar could be regarded as constituting an attractive place, the principle of the "attractive nuisance" doctrine was not applicable to the situation here presented, nor did it properly call for an instruction upon it.

Such being our view, it follows that the plaintiff should not be heard to complain that the instruction as given did not present to the jury what he conceives to be a proper statement of the "attractive nuisance" doctrine, from the invoked principle of which it would appear his admissions have precluded him.

Neither is his objection to that part of the instruction which confines appellant's recovery of damages for impairment of his earning capacity, by reason of permanent injuries received, to the time following his attaining his majority, meritorious, in that such limitation given by the instruction, restricting the period of his recovery, can certainly work no prejudice to the substantial rights of appellant where the jury has found upon the evidence that he is not entitled to recover any damages for any time.

Further, appellant complains that the verdict is flagrantly against the evidence.

From the summary of the evidence hereinabove set out, it is patent that there was ample direct evidence before the jury to sustain its finding of a verdict for the defendant Fehr. The jury heard both sets

of witnesses relate their conflicting accounts of the facts and circumstances under which plaintiff was injured upon this occasion, and upon the issues so joined concluded that the version given by defendant's witnesses was the true one and should prevail. The rule is too well settled to need citation of authority that in such case we are not authorized to disturb the jury's finding.

Numerous other objections were set out in appellant's motion and grounds for a new trial, some of which are here again presented upon appeal, but, after a careful consideration of them, we do not feel it needful to unduly extend this opinion by their discussion, in that we regard appellant's contentions respecting such points to be trivial and without merit.

A further objection, however, is that the court erred in entering a directed verdict for appellee Tabb. It appears by brief of counsel that the trial court in so doing was influenced by the holding of the case of Smith & Sons v. Dawson, 206 Ky. 107, 266 S. W. 926. In that case a truck collided with plaintiff's automobile. When plaintiff attempted to ascertain the number of the truck, the helper on the truck struck plaintiff's head with an iron pipe and it was held that in so doing the helper was not acting within the scope of his employment and his employer was not liable therefor, where it was shown that the employee who assaulted plaintiff had no duties under his employment other than to carry furniture and other commodities being moved to and from the truck.

Appellant complains that the facts of the present case, determining the scope of the negro teamster's employment, are not analogous with those of the Smith Case, and therefore that same was not here applicable as supporting authority for the peremptory given, in that here the employee, by reason of his being intrusted with the care and custody of the team, had the implied authority to protect it while in his keeping, and that, in so doing, he was acting in the course of his employment. In support of such contention, appellant relies upon the holding of the often-quoted case of Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394.

There, a watchman was employed to guard appellee's property, who, by the terms of his employment, was authorized to carry firearms and to use them in protecting the property whenever in his judgment it appeared necessary or advisable to do so. Under such conditions it was held that the employer was not absolved from liability for the watchman's improper use of the pistol merely because the injured person was not on, but near, the property when shot, where the watchman judged that he was doing or attempting wrong to the property, and that it was necessary to fire at him to protect it.

The fact appearing in this cited case that the employee was by his employer armed with a pistol, and authorized to shoot when in his judgment needful to protect the property, was, the court held, a clothing of him with authority to use the gun according to his judgment, and therefore the master was clearly liable for the injury occasioned by the employee's shooting, even though he had made a mistaken use of the authority given him.

Clearly, no such character of employment of the colored teamster appears here, making the quoted case one easily distinguishable from the instant one, which is in its facts decidedly more analogous to the Smith Case, supra, where the employee was limited to one special service, just as here the teamster Leavell's authority was limited to the one service of hitching up and driving his team as directed, and at the day's close returning it to his employer's barn, as he was here doing, when he left this regular course of his employment to chase and rock the boys who, it is claimed, had rocked the team. We find no evidence here of an employment of the driver vesting him with any general supervisory police power over the team or conferring upon him any rights or duties save that of driving it as directed and then returning it to the barn.

We are, for such reason, of the opinion that the trial court rightly sustained the appellee Tabb's motion for a directed verdict.

It is also complained that counsel for plaintiff was guilty of misconduct in his closing argument, but we have examined that argument and cannot find any sub-

stantial basis for the complaint. The same may be said to the like complaint made as to misconduct on the part of the jury and as to appellant's being taken by surprise by reason of appellee's counsel testifying.

Other errors are relied upon, but they are of such a trivial nature and of so little consequence that we deem they merit no discussion here beyond the mere statement that, conceding for the purpose of argument that they were errors, they were not of a prejudicial nature.

Therefore, for the reasons indicated, we are of the opinion that the trial court did not err in the judgments entered by it, and for such reason, the same are hereby affirmed.