## Deaton's Adm'r v. Kentucky & West Virginia Power Co.

May 22, 1942.

C. A. Noble for appellant.

Craft & Stanfill for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

In this action filed by the appellant to recover damages for the wrongful death of his decedent, Paul Deaton, who was killed by coming in contact with one of appellee's power lines while climbing on a tower supporting the line, the trial court directed a verdict for the appellee at the conclusion of appellant's evidence. From the judgment entered on that verdict this appeal is prosecuted.

The tower in question, located across the river about one mile from Chavies, an unincorporated village in Perry County, was 30 or 35 feet from a county road. The road makes a curve near the tower and a pathway running by the foot of the tower was used as a short cut across the curve. The tower was constructed of 4 x 4 angle irons about one-fourth inch thick, there being four of these angle irons, one on each corner of a square, about five and a half or six feet apart at the bottom, set in concrete bases coming almost together at the top. The uprights were laced with one and a half inch angle irons, starting at the foot of each leg and continuing to be carried up and across in zig-zag fashion to the top, thus forming a continuous ladder-like structure on each of the four sides of the tower, which could easily be climbed from the ground to the top of the tower. At the top of the tower were placed two cross arms or beams upon which were strung three wires carrying 30,000 volts of electricity.

On the day in controversy the decedent, together with his four year old brother and another nine year old boy, Tommy Porter, while walking down the road from decedent's home came to the tower and began climbing and playing on it. Paul climbed to the top of the tower and came in contact with one of the power lines and thereby received a shock which threw him to the ground resulting in his death. While Paul was climbing the tower Tommy Porter called to him several times and asked him if there was any "juice" or if it was "juicing him" and Paul answered "No". It also appears that children were accustomed to playing and climbing on the tower. Don Napier, a fifteen year old boy, testified that he had played on it ever since he had been "big enough to get around on it". No fence was maintained around the tower and it was therefore readily accessible to children who might desire to climb upon it, and there were no signs warning of danger.

Appellant insists that the evidence was sufficient to justify a submission of the case to the jury under the attractive nuisance doctrine and this is the only question confronting us. While some jurisdictions reject the attractive nuisance doctrine, it is firmly established in our state. That doctrine is that where one maintains on his premises something that is dangerous to children of tender age and which he knows, or ought in the exercise of ordinary care to know, is attractive, alluring or enticing to children, he owes the duty as a matter of common humanity to take such reasonable precautions as the circumstances admit to protect them from injury while playing with it or in its vicinity. Ball v. Middlesboro Town & Lands Co., 68 S. W. 6, 24 Ky. Law Rep. 114; Brown v. Chesapeake & O. Railway Co., 135 Ky. 798, 123 S. W. 298, 25 L. R. A., N. S., 717; Gnau v. Ackerman, 166 Ky. 258, 179 S. W. 217; Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S. W. 519; Union Light, Heat & Power Co. v. Lunsford, 189 Ky. 785, 225 S. W. 711; Meredith v. Fehr, 262 Ky. 648, 90 S. W. (2d) 1021.

It seems clear that the evidence was sufficient to require a submission to the jury under the attractive nuisance doctrine. The tower, located immediately adjacent to a public highway, or at least a pathway commonly used by the public, was such a structure as the jury might well find to be attractive and alluring to children. It was so constructed as to form a ladder on all

four sides, running from the ground to the top of the tower where the wires were suspended. The climbing propensity of children is a matter of common knowledge and the tower was constructed in such a manner and located in such a place as to make an inviting appeal to this propensity.

In McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N. W. 815, a power company which maintained upon its premises adjacent to a public park a pole equipped with spikes driven on either side as a ladder, approximately eighteen inches apart, the lower one being about eighteen inches above the ground, and had about twenty-five feet above the ground a cross arm bearing insulators to which were attached electric wires, was held liable for the death of a twelve year old boy, who climbed the pole and received a fatal shock. In Burns v. Chicago, 248 Ill. App. 204, it was held to be a question for the jury whether an electric light pole in the street, with a hole in the pole a few feet above the base, with steps on each side of it a few feet above the hole, was so attractive to children in their sports as to suggest the probability of a boy climbing the pole, touching the wire and being killed and whether the city was negligent in maintaining the wires as it did. The two cases referred to bear more similarity to the facts of the instant case than any others we have examined, a vast number of which are contained in A. L. R. annotations in 36 A. L. R. 46, 45 A. L. R. 983, 39 A. L. R. 488, and 53 A. L. R. 1347.

Appellee's principal reliance to sustain the judgment is on Mayfield Water & Light Company v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 18 L. R. A., N. S., 179, 130 Am. St. Rep. 469. There, the attractive nuisance doctrine was held not to apply to guy wires running at an angle of about forty-five degrees from a telephone pole thirty feet high, so arranged as to be about four feet apart at the ground, coming together at the top of the pole, which passed within eight inches of an electric wire at the top of an eighteen foot pole, on which children played, holding to the upper wire and walking on the lower wire. The situation there, however, was materially different from that in the instant case. The climbing was not made easy and inviting as was the case of the tower here involved. The court said that the guy wires were not dangerous instrumentalities and were not attractive or alluring to children within the meaning

of the turntable cases. Other domestic cases cited by appellee, such as Frederick's Adm'r v. Kentucky Utilities Co., 276 Ky. 13, 122 S. W. (2d) 1000; Watral's Adm'r v. Appalachian Power Co., 273 Ky. 25, 115 S. W. (2d) 372; Hermes' Adm'r v. Hatfield Coal Co., 134 Ky. 300, 120 S. W. 351, 23 L. R. A., N. S., 724; Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S. W. (2d) 345, and Dennis' Adm'r v. Kentucky & West Virginia Power Co., 258 Ky. 106, 79 S. W. (2d) 377, are readily distinguishable from the facts of the case before us, as are the foreign cases of Texas Power & Light Co. v. Burt, Tex. Civ. App., 104 S. W. (2d) 941; Grube v. Baltimore, 132 Md. 355, 103 A. 948, L. R. A. 1918E, 1036, and Wallace v. Great Western Power Company, 204 Cal. 15, 266 P. 281. It would draw this opinion out to undue length to enter into separate discussion of each of these cases but we have considered them and conclude that in none of them did the structure involved possess the characteristics of allurement and attractiveness to children to the same extent as did the tower in controversy.

We think the evidence was sufficient to authorize a submission to the jury on the question of the alluring and attractive character of the tower to children and as to appellee's negligence in maintaining it near the public road without any precautions taken to prevent children from climbing upon it.

Judgment reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.