HARRIS *v.* INDIANA GENERAL SERVICE COMPANY.

[No. 25,847.   Filed March 9, 1934.]

*Warner, Clark & Warner* and *R. W. Lennington & Sons*, for appellant.

*Silverburg, Bracken & Gray* and *Ernest T. Meyers*, for appellee.

ROLL, C. J.—This action was brought by Ernest T. Harris as next friend of John A. Harris, a minor, to recover damages for personal injuries sustained by the said John A. Harris, and alleged to have been caused by the wrongful and negligent acts of appellant.

The complaint is in one paragraph, to which the trial court sustained a demurrer for want of facts. Appellant refused to plead over and judgment that he take nothing by his complaint was entered. Appellant assigned as error the sustaining of appellee's demurrer to the complaint and that is the only question presented on this appeal.

The facts alleged in the complaint are in substance as follows: That appellee is a corporation engaged in the business of manufacturing and selling electricity for light and power purposes to the industries and citizens of Muncie and other cities and towns in Indiana; that at the time of the injury complained of the defendant maintained an electric line consisting of wires, poles, towers, insulators, cross-arms, and appliances, extending from defendant's power house in Muncie, Indiana, in a northwesterly direction across Delaware and Madison counties to the city of Alexandria, and to other cities; that the line of steel towers, supporting three high voltage, electric current carrying wires were erected upon a right of way owned by defendant which crossed the farm owned by Ernest T. Harris

herein, and one of said towers was located near the center of said farm. The easement of appellee was in the usual form, and provided that appellee was to so use said right of way as not to prevent the owner of the premises from pasturing the same or from using the same for agriculture or other purposes not inconsistent with defendant's rights.

That the poles or towers are placed about three hundred feet apart, and are constructed of steel set in concrete foundations. That said steel tower consists of two upright steel beams about forty feet in length which stand about eight feet apart at the base and about four feet apart at the top. That said upright steel beams were bound together by smaller crossbeams. The lowest of said cross-beams was about thirty inches from the ground, and a cross-beam was placed parallel with said lowest cross-beam and attached to each of said upright beams about every five feet from said lowest beam to the top of the tower. A brace rod extends from each end of each cross-beam diagonally to the opposite end of the next higher crossbeam. That at the point where the two lowest brace rods cross there was a sheet metal painted sign, about 8″x18″ in size and had thereon the words, "Danger—High Voltage—Keep Off."

The cross-beam at the top of the tower extends southerly from the tower about thirty-eight inches. The cross-beam next below said top cross-beam extends northerly from the tower about thirty-eight inches, and the cross-beam second below the top beam extends about thirty-eight inches southerly from the tower. To the end of each of the three above described cross-beams there was attached by means of a metal fastener an insulator, and below the insulators there was attached by a metal fastening one of the three high tension electric wires, which were not insulated in any way. Each of

the three wires carried a current of electricity of thirty-five thousand (35,000) volts.

Attached to the more southerly of the two upright poles were metal steps, about eighteen inches apart and beginning about eight feet off the ground and extending to the top of the tower.

That said towers were constructed as aforesaid and the cross-beams, rods and etc., presented suitable hand-holds and footholds for one who might desire to climb said tower, and that said tower was so built and constructed that it presented an inviting appearance to children and youths who might be at, near, or about said tower, and was calculated to attract children and youths to climb thereon, and was so constructed that children and youths might easily climb the same from the bottom to the top. That a large per cent of the towers forming a part of the electric line from Muncie to Alexandria were constructed as above described, and for a long time prior to the injury herein complained of, many children and youths often played about and climbed upon many of said towers, of which fact defendant had full knowledge.

That said tower and the appliances thereon, herein above specifically described, for a long time prior to the injury herein complained of, was defective and out of repair and was so constructed that a short circuit of the current from one or more of said high tension electric wires frequently occurred, causing such current to flow through the various parts of said tower, of which fact the defendant had full knowledge long prior to the injury herein complained of.

That on May 12, 1925, the time of the injury complained of, plaintiff was eighteen years of age, and lived with his parents on said farm. The plaintiff was a strong, muscular boy, able to and did do many kinds of manual labor. That when plaintiff was about one

year of age he had an attack of scarlet fever which caused him to be deaf and dumb ever since, and on account of which condition he secured very little education, was not able to read or comprehend the meaning of written words and languages, and at the time of the injury he was unable to read or understand the meaning of said sign attached to the above described tower, and that plaintiff's mental capacity and attainments were no more than those of a small child of not more than six years old, and that he did not comprehend the danger connected with climbing upon said tower.

That on May 12, 1925, the date of the injury, plaintiff was working with his father in the field where said tower was located, and near said tower. That about 10 o'clock A. M. on said day plaintiff noticed said tower and left his work and went to the tower and did climb the same, and when he placed his feet upon or near the brace rods below the lower beam which extended southerly from said tower, a short circuit of the electric current in one or more of said high tension wires occurred, and said current from one or more of said wires leaped across and flowed into and through various parts of said tower, and into and through plaintiff's body causing severe, painful, and permanent injuries, which are detailed by the plaintiff but which we need not repeat here. The negligent acts alleged are classified by the plaintiff in his complaint as follows:

"(a) In negligently so constructing and maintaining said above described pole or tower that children and youths were able to and did climb thereon,

(b) In negligently failing to guard said pole or tower and thus to prevent children and youths from climbing theron,

(c) In negligently constructing and maintaining said pole or tower in such manner and in such defective condition that the current from one or more of said high tension wires at times flowed into and through the various parts thereof,

(d) In negligently failing to repair said pole or tower, after knowledge of its defects, so that the current from one or more of said high tension wires could not flow through the various parts thereof,

(e) In negligently permitting said pole or tower to remain out of repair and in a defective condition so that short circuits of the electric current from one or more of said high tension wires would and did occur from time to time, causing such electric current to flow through the various parts of said pole or tower, after knowledge of said defective condition, and in negligently permitting said pole or tower to so remain out of repair and in such defective condition until the time of plaintiff's injuries herein complained of."

The question presented by appellee's demurrer is, whether the facts alleged show actionable negligence.

Appellee contends that the facts show that the defendant was guilty of no acts of negligence which in any way caused the accident to plaintiff or the injuries resulting therefrom.

Actionable negligence consists of a duty owing, the failure to perform that duty, and injury resulting therefrom. *Indiana & Chicago Coal Co.* v. *Neal* (1906), 166 Ind. 458, 460, 77 N. E. 850; *Faris* v. *Hoberg et al.* (1892), 134 Ind. 269, 274, 33 N. E. 1028. There can be no question, that, if plaintiff has alleged facts showing a duty owing from the defendant to him he has shown actionable negligence, as the alleged facts show a failure to perform that duty and injuries resulting therefrom, and the demurrer should have been overruled. So the most difficult question is to first determine whether, under the facts pleaded, the defendant owed the plaintiff the duty contended for by appellant. It is well recognized that electricity is a dangerous force, and the law requires that those who engage in its distribution, while not liable as insurers to those who may come in contact with current carrying wires, are required to exercise reasonable care to

keep such wires safely insulated. *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577; *Fort Wayne, etc., Traction Co.* v. *Stark* (1920), 74 Ind. App. 669, 127 N. E. 460. We doubt if this complaint could be sustained upon what is known as an *attractive nuisance* as laid down in what we know as the "turntable cases." We have a different set of facts in this case, and one, it seems to us, comes near the rule laid down in the case of *Fort Wayne, etc., Traction Co.* v. *Stark, supra,* where the court said:

> "It is not the law . . . that one who maintains premises on which a dangerous thing is suffered to exist, is not liable for injuries thereby resulting to children, unless such an instrumentality is what is termed an 'attractive nuisance'."

In 1 Thompson, Negligence, 944, the author in discussing the liability to children, of one who suffers a dangerous agency to exist on his premises, correctly states the law as follows:

> "Although the dangerous thing may not be what is termed an *attractive nuisance*—that is to say, may not have an especial attraction for children by reason of their childish instincts—yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them."

The complaint charges negligence on the part of the defendant in maintaining this tower on the farm where plaintiff lived, in a defective and dangerous condition; that at intervals (not all the time) the tower would become charged from the high tension wires on account of defective insulation. This condition was known to defendant for a long time before

the injury occurred. 'When the tower became charged with 35,000 volts of electricity it was an exceedingly dangerous instrument, and was so located that plaintiff or others (even adults) might come in contact therewith while so charged and be injured thereby. The tower was located in a field used for pasture or agriculture purposes. Defendant knew that children played around towers similarly constructed· and from the facts pleaded and common knowledge we think that appellee should reasonably have anticipated that children or even adults might come into contact with the charged tower. It would seem to us a strange rule of law that would permit one engaged in the business of transport-·ing high voltage currents of electricity on towers or poles, that are so constructed as to be presumably insulated from the high tension wires, and then to knowingly permit the insulation to become defective so as to charge the entire tower, and to knowingly permit it to so remain without giving any additional warning or notice to persons likely to come in contact therewith and become injured, to escape liability by reason thereof.

Appellant, while eighteen years of age, on account of being rendered deaf and mute, had the mental development of a child not more than six years of age. █ He was in fact a child, without judgment or discretion, and as such should be held to that degree of care as children of his mental capacity and judgment are reasonably chargeable.

Notwithstanding plaintiff might have been guilty of a technical trespass, yet under the facts stated in the complaint, this fact would not relieve the defend-█ant from the duty of using reasonable care to protect or guard the dangerous tower or to give reasonable and timely warning of the dangerous condition of the tower by reason of it being out of repair as to become charged, after having known of such a condi-

tion for a long time prior to the injury complained of, and where defendant could have reasonably anticipated that children or other persons might come into contact therewith, and when such a contact was reasonably sure to inflict serious injury in such event, a duty thereby devolved upon appellee to take whatever steps were reasonably necessary to prevent injury to those that were likely to come in contact with the dangerous instrument.

We conclude the trial court erred in sustaining the demurrer.

Judgment reversed with instructions to overrule appellee's demurrer to the complaint and for further proceedings not inconsistent with this opinion.