## Gray v. Golden et al.

Dec. 18, 1945.

As Modified on Denial of Rehearing Jan. 29, 1946.

478

John B. Rodes and Rodes, Harlin & Willock for appellant.

Rodes K. Myers and Leland H. Logan for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This is an appeal from a judgment in two consolidated cases for damages on account of personal injuries received by Betty Louise Golden, an infant six years of age, and medical and other expenses as a result of an accident in which Mrs. James H. Gray, wife of the appellant, ran over the little Golden girl.

On July 16, 1944, Mrs. Gray had driven her automobile to the grocery for the purpose of getting some sandwiches for the evening meal. The Grays and the Goldens live next door to each other on Kentucky Street in Bowling Green. There is a driveway between the two houses which is owned by the Grays, the Golden driveway being on the far side of the Golden house. As Mrs. Gray was proceeding out the driveway she saw a large cardboard box, or carton, in the driveway, and stopped and removed it, together with some pots and pans which had been left there by some children who had been playing at that place. As she entered her driveway, when returning, she saw that the cardboard box, or carton, was again in the driveway, but instead of stopping and again removing it she proceeded to run over it. The little Golden girl was playing inside the box and the right wheels of Mrs. Gray's automobile ran over the child, breaking her leg and pelvis bone and otherwise

injuring her. Mrs. Gray immediately telephoned her husband who came home and took the Golden child to the hospital where she remained eleven days. These injuries caused the child to be confined to her home some three or four weeks, and resulted in a shortening of one leg which the medical testimony shows to be permanent.

The trial resulted in a verdict of $1,500 on account of the injuries, and $243.70 on account of medical expenses. As grounds for reversal appellant urges that the petitions were defective and that demurrers to them should have been sustained; that the instructions were erroneous and that the court should have directed a verdict in his favor.

The petitions properly charge negligent operation of the automobile by Mrs. Gray and there is no merit in the contention that the demurrers should have been sustained.

It is vigorously contended that Betty Louise Golden was a trespasser and that no duty was owed to her until after the discovery of her peril. It is true that trespassing children occupy the same position as trespassing adults, with the exception of the "attractive place" doctrine, and that the general rule is that no duty is owed to a child trespasser until after discovery of the peril. See Ice Delivery Co. v. Thomas, 290 Ky. 230, 160 S. W. 2d 605. However, in determining the question as to whether or not the instructions given were prejudicial it is necessary that reference be made to the testimony introduced at the trial.

It appears from the evidence that Betty Louise Golden, her sister Shirley, and a neighborhood child, Marie Neighbors, had been playing "house" in the Gray driveway, using a large box, or carton, as their "house." They had their supper about 6:30 and had been playing approximately one-half hour at the time of the accident. The plaintiff below offered all three of the children as witnesses, but the court, after an examination of them, refused to permit Betty Louise and the Neighbors girl, who was also six years of age, to testify. He properly allowed Shirley Golden, who was eight years of age, to testify. She testified that she heard Mrs. Gray's automobile turn into the driveway and that she jumped up and "hollered" at Mrs. Gray and threw up her hands,

but that Mrs. Gray paid no attention and continued up the driveway.

Mrs. Gray denied that she saw the children before the accident or that Shirley Golden attempted to stop her before she ran over the box. However, we think that her testimony shows that she knew the children had been playing with the cardboard box in her driveway. This is indicated by the following excerpts:

"118. These children had been accustomed to playing in that driveway, had they not? A. They had not.

"119. You say you had seen that paper carton before. Where was that? A. Just before I went out I cleaned my drive. That was the first time I had taken the things out of my drive. They had been playing out there.

"120. Did that cardboard carton belong to you? A. No.

"121. Where did it come from when you saw it before? A. The children had had it.

"122. You saw it when you went out. A. No, I didn't.

"123. When did you see the carton? A. When I started to go out to the grocery. They had been playing out there.

"124. In the driveway? A. Yes.

"125. When you went to the grocery? A. Yes.

"126. And they were playing with this same carton, weren't they? A. They were not out there at the time.

"127. But they had been just before that, hadn't they? A. The carton was out there and I removed it, see, as well as some pans and other things they had in the drive; but I didn't see the children.

"128. But they had played in the drive shortly before you left, hadn't they? A. From the evidence I saw they had been there, but I didn't see them.

"129. Before you left? A. Before I left.

"130. So you knew at the time you drove out of the driveway that they had pulled this carton and some other things into the driveway before you left, because

you cleaned it out before you left, didn't you? A. I did.

\* \* \* \* \* \*

"191. Did you see this cardboard box when you ran into that driveway? A. I did.

"192. You knew, of course, that you had taken it out before you left? A. Yes.

"193. You knew that somebody, within that short period of time, just while you were gone, had brought it back out there, didn't you? A. Sure.

"194. You knew it didn't walk out there? A. Yes.

"195. You knew those children had been playing out there immediately before you left, didn't you? A. Well, I had evidence.

"196. I say, you knew it? A. Yes.

\* \* \* \* \* \*

"206. Did you know there was nothing under that box? A. If a cardboard box was laying there I thought, 'Well, it won't make any difference if the car runs over it.'

"207. But it wasn't lying up there, was it? It was angled up, wasn't it? A. Yes.

"208. Did you give any thought to the fact that there might be a child under it? A. No, I did not, because I had had no occasion to see a child under it.

"209. Did you even think that a dog might be under it? A. No.

"210. And you, knowing it was there, deliberately drove over it. Is that right? A. I saw it there and I ran over it.

"211. And you knew you were going to run over it? A. Sure.

"212. You could have stopped? A. Oh, sure.

"213. You could have stopped the car and taken it out just like you did before you left, couldn't you? A. Sure; but by seeing no occasion to—before I didn't find any—it never entered my mind that anything would be under it again.

"214. How did you think it got back there? A I

knew the children tossed it; but how did it get there in the first place?

"215. You knew the children tossed it? A. I knew the children tossed it there in the first place; but when I came out first there wasn't anybody there near. I could have run over it then without damage."

Mrs. Eleanor Robinson Wood, a witness for Mrs. Gray, who had been sitting in a rear bedroom of the Gray home which overlooked the driveway, testified as follows:

"87. You saw her leave? A. Yes, sir.

"88. Did you see her pick that carton up and take it out of the drive before she left? A. Yes, sir.

"89. You saw her do that? A. Yes, sir.

"90. Did you see it put back there? A. No, sir.

"91. Did you ever see those children out there while you were there that afternoon? A. Yes, sir, I saw them out there playing.

"92. How long had you seen them playing before Mrs. Gray drove back? A. Well, I don't know.

"93. About how long had it been since you had seen them before she drove back home? A. Twenty or twenty-five minutes.

"94. Did you see them playing around that carton? A. Yes, sir.

"95. You knew those children brought it out there? A. Yes, sir.

"96. You knew they had been playing with it? A. Yes, sir."

From this testimony it is apparent that Mrs. Gray knew that the children had been playing in the driveway on the afternoon of the accident. It also seems clear that Mrs. Gray knew that these children had been playing in and about the cardboard box which she had once removed from the driveway. She practically admits that she knew the children had placed the box in the driveway and when she saw that it had been returned to the driveway within twenty or twenty-five minutes after she had removed it, it should have been apparent

to her that the children had again placed it there for the purpose of continuing their game of "house."

We think that the facts in this case required that a distinction be made between it and the line of cases which apply the harsh trespasser rule to children. In the case of Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S. W. 519, 520, a child of nine years of age was killed by a large rock that was rolled down the side of a hill while she was playing on the premises of the coal company. It appeared from the evidence in that case that children were in the habit of playing under shade trees which stood at the base of a steep hill on the land of the coal company and that this fact was known to the agents and employees of the company. The lower court directed a verdict for the coal company on the ground that the child was trespassing on the premises of the coal company and that her peril was not discovered in time to have prevented the injury that resulted in her death. In reversing that judgment this court said:

"If the little girl at the time she was killed was trespassing on the premises of the coal company, and should be treated as a trespasser, it is the settled rule of this court that an action would not lie against the coal company for her death. Leaving out of view the 'attractive place' doctrine, the rule is that, under ordinary conditions, trespassing children occupy the same attitude as trespassing adults, thus imposing on other persons only the duty of exercising ordinary care to prevent injury to them after their peril has been discovered. This is a rather harsh doctrine, but it is firmly fixed as the law of this state by numerous decisions, and is also the prevailing rule announced by courts generally.

\* \* \* \* \* \*

"There is no evidence that Trail knew at the time he pitched this rock from the road down the hillside that these children were playing at the base of the hill directly under the point from which the rock was pitched, or at any place on the premises of the coal company. But there is evidence that both Trail and the superintendent of the coal company knew that the Lyttle children were in the habit of playing under the trees at the place where the little girl was struck by the rock, and had been warned not to pitch from the road to the hill-

side below it any large rocks or other things that might roll down the hill and hurt the children. And, for the purpose of testing the correctness of the ruling of the trial court in taking the case from the jury, we must accept as true the evidence as to notice and warning heretofore set out. But, conceding this, counsel for the coal company argue that the case must be adjudged by the ordinary rules defining the duty and liability of the landowner to trespassers, and contend that there can be no liability here, because Trail at the time. he pitched this rock did not know of the presence of the children under these shade trees. The rule, however, describing the duty of the property owner to trespassers and limiting his liability to injuries inflicted by the failure to exercise ordinary care after he has discovered the peril of the trespasser should not, we think, be extended to embrace a state of case in which the owner is under a duty to anticipate the presence of the intruding children at the time and place where the accident happens. If the coal company had not known that these children were in the habit of playing under these shade trees, or if the children had gone there for the first time on the day of the accident, the case would fall directly under the general rule exempting the owner of the premises from liability, as the evidence does not show that Trail knew the children were at this place when he pitched the rock.

"But that is not the case we have. Here the coal company, some time before the accident, knew that it was the habit and custom of these children to play under these shade trees, and it had been warned to take care not to injure them. It further knew the custom of its servant in rolling large rocks down the steep hill at the foot of which these children played; and it could not well escape knowing that this practice put in peril the safety of the children. With this knowledge and notice the coal company did not forbid, so far as this record shows, the children to play on its premises, nor did it warn the parents to keep them off. Under these circumstances it can hardly be said that they were trespassers in the ordinary meaning of the word as used in the cases defining the duty and liability of landowners to trespassers, or that the coal company only owed them the duty extended to ordinary trespassers. In a sense they were technical trespassers, as they had not been invited

on the premises or given express permission to play there. But if a person knows that young children are in the habit of playing on his premises, and has notice or warning that they are liable to be hurt by his method of doing business, we think it is incumbent upon the property owner to admonish the parents of the children to keep them off his premises or to take ordinary care not to harm them, even though they may not be there by his express invitation or consent.

"Under conditions like this it would be cruel in the extreme to treat little children like adults, and to regulate the duty of the landowner to them by the spirit of indifference that might with much propriety be adopted in dealing with persons of mature years who not only knew they were trespassers, but knew how to take care of themselves. The property owner may not be obliged to keep his eyes open to discover the presence of children on his premises, but, when he does discover them habitually intruding at a place that is unsafe for children, the plainest dictates of humanity require that he should do something or say something to save them from probable injury or death."

The case under consideration is similar to the case just quoted from. We feel that the judgment should be sustained although the instructions complained of are improperly drawn and would be erroneous and prejudicial except for the fact that Mrs. Gray had knowledge that the children had been playing in and about the cardboard box on the afternoon of the accident.

In the case just quoted from it appeared that children customarily played at the place where the child was killed, and the court held that it was incumbent upon the property owner to either warn the parents of the children to keep them away or to take ordinary care not to harm them.

While there is no evidence in this case that it was the habit or custom of children to play in the driveway, it is clear that Mrs. Gray knew that children had been playing in the box on the very afternoon the accident occurred. When Mrs. Gray saw that the box had been replaced in the driveway approximately one-half hour after she had removed it, she should have anticipated the fact that the children had placed it there again, and the exercise of ordinary care would have required Mrs. Gray

to make an investigation before proceeding to run over it. Under all the circumstances of the case we can not say that the instructions given by the court were prejudicial.

The next ground for reversal is that the lower court improperly applied the "family purpose doctrine" in submitting the case to the jury. These actions were originally brought against Mr. and Mrs. Gray, but before trial were dismissed as to Mrs. Gray. The facts with reference to the ownership and maintenance of the automobile which was driven by Mrs. Gray at the time of the accident are as follows: In 1941 Mr. Gray purchased the automobile and gave it to his wife. The bill of sale was issued to Mrs. Gray and the car has been licensed each year in Mrs. Gray's name. She testified that at times she provided gas and oil and possibly some repairs for the automobile. On the other hand, it is clear from the evidence that Mr. Gray not only paid for the automobile but furnished and paid for practically all of the gas and oil used and paid for whatever repairs were necessary. He listed the automobile as his own property for assessment of taxes. He paid for the insurance on the car. It is a fair statement, under the evidence, to say that Mr. Gray purchased and maintained this automobile for the use of his family, notwithstanding the fact that the title to it was in Mrs. Gray. Mere absence of title is insufficient to prevent the application of the "family purpose doctrine." If the head of a family provides and maintains an automobile for family use, he is liable for the negligent operation thereof by dependent members of his family notwithstanding the fact that the actual title to the automobile may be in the name of some other member of the family. The bare title is not the determining factor. It is the providing and the maintaining of the automobile for family purposes upon which the "family purpose doctrine" is based. The underlying principle of this doctrine is, of course, that of principal and agent, and the fact that the legal title to the automobile is in some one other than the head of the family does not prevent its application. The element of control is implied from the purchase and maintenance of the automobile by the head of the family. The fact that the husband is the head of the family and has provided and maintained the automobile carries with it the presumption that the auto-

mobile is subject to his control notwithstanding the fact that the bare legal title is in some one else. See Mc-Namara v. Prather, 277 Ky. 754, 127 S. W. 2d 160; Abell v. Whitehead, 266 Ky. 764, 99 S. W. 2d 770; Miracle v. Cavins, 254 Ky. 644, 72 S. W. 2d 25; Creaghead v. Hafele's Adm'r., 236 Ky. 250, 32 S. W. 2d 997, and other cases.

The last point presented as a ground for reversal is that the instruction relating to the measure of damages is erroneous and prejudicial. This instruction, like the other instructions complained of, was poorly drawn but we do not think it was prejudicial in light of the verdict returned by the jury.

While this case is not free from doubt and is rather a difficult one, a careful consideration of all the evidence and the instructions has led us to the conclusion that the judgment is correct. While there are errors in the record, we are convinced that they were not prejudicial and that, on the whole, justice has been done.

The judgment is affirmed.