Charles MANN, a Minor, Appellant,

v.

KENTUCKY & INDIANA TERMINAL RAILROAD COMPANY, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1955.

Rehearing Denied June 22, 1956.

A. Scott Hamilton, Louisville, for appellant.

Louis Seelbach, Louisville, for appellee.

STANLEY, Commissioner.

Charles Mann, two and a half years old, left his home adjoining the switchyard of the appellant, Kentucky & Indiana Terminal Railroad Company, in Louisville, and went out on the tracks, apparently following his dog. His grandmother and aunt rushed to his rescue; but before they could reach the child, he was struck by a tank car running unattached and unattended down the yard. He lost his right arm at the shoulder and his right leg at the hip. At the conclusion of all the evidence in a suit for damages, instituted in his behalf against the Railroad,

the court directed a verdict for the defendant.

A comprehensive view of the scene of the accident and surrounding conditions is given us by maps and photographs, but it is not easy for the writer to pen picture them.

The tracks, which are called a "classification yard", fan out northwardly from Market Street for perhaps three-fourths of a mile. At its greatest width there are 48 tracks in the yard. Sometimes as many as 1,000 cars a day are moved in it. Rowan Street is bisected by the yard, which is about 640 feet wide at that place. There is no street or public way across, over or under these many railroad tracks between 30th and 32nd Streets except underpasses at Market Street, two blocks to the south, and Bank Street, several squares north. The most important factor in this case is that there is no fence or other kind of barrier at the end of Rowan Street on the east side of the tracks. It is level with the tracks, open and unprotected in any manner. The way is quite like a street intersection. But on the opposite, or west side of the switchyard, a high, strong, net-like, woven wire fence has been erected in the rear of residences fronting on 32nd Street and extended across that end of Rowan Street. An improvised stile, or ladder, at that end of Rowan Street enables persons to go over the fence. Thus, on the east side the yard is open and offers temptation to a pedestrian on Rowan Street to cross the tracks rather than detour two blocks to the underpass at Market Street. There is a sign post at the end of the street warning that the yard is private property and that trespassing is dangerous and forbidden. It was proved in this case that railroad yard employees and others customarily parked their automobiles there at the end of Rowan Street. Workmen at a large industry on that street immediately west of the yard passed to and from it from the east side.

Another important fact is that 35 to 40 children live in the one block of Rowan Street just east of the tracks with its open and unprotected end.

In making up trains and distributing cars, the method of operation is for the locomotive to start the cars northwardly and let them roll by gravity down onto the several tracks as desired. Normally, as on this particular occasion, no brakeman rides the cars and there are no warning or signal devices used on them. They make but little noise.

The injured child, Charles Mann, lived in a cottage on the corner of the open, unprotected end of Rowan Street and the railroad yard. The house seems to be right on the railroad boundary line. There was a picket fence around a narrow front yard except on the east side where there, was a loose hedge. Thus, there was an imminent and deadly hazard for a child in this house and others within the block. This little child had gone 125 feet from the front gate of his home to the place on the third track, about 37 feet from the end of the street, where he was struck by the coasting railroad car.

The appellant contends that the railroad company was negligent in maintaining its yard bisecting the street, and conducting its operations in a dangerous manner in a thickly populated area, where many children lived, without having taken reasonable precaution to protect them or the public, whom they knew trespassed upon their property.

We summarize the evidence concerning knowledge of the defendant of the presence of people in the yards, which the appellant argues imposed the duty of anticipation. Switchmen operating the yards admitted knowledge of the density of the population, including many children on Rowan Street. As we have stated, the trainmen regularly parked their automobiles at the end of the street while they were at work. There were one or more footpaths across the yard between the ends of the street which were habitually used by the public, both men and boys. A trainmen's shanty was approximately in this line of travel and about the center of the yard. The evidence introduced by the plaintiff shows that children were frequently in the yard, and that some-

times they were run off and sometimes not. The railroad employees admitted seeing men and boys in the yard but denied they were in the habit of crossing the tracks or frequenting the yards except to walk along the side of the east track. The yards were inspected once or twice a week, and three patrolmen constantly checked the seals and conditions of the cars and looked out for thieves. Whenever they saw children in the yard, they chased them off.

■ We approach the consideration of the case by noting that if there was negligence on the part of the railroad, it was not in relation to discovering the peril of a trespassing child or to any duty after such discovery. We are concerned with the matter of duty to the child before he strayed onto the tracks. The question is presented by the appellant, in general, as being whether it was proper for the trial court to take away from the jury the right to determine whether or not the defendant took reasonable precautions for the safety of children who might go upon the tracks and there be exposed to the danger inherent in the operation of this large railroad switchyard where cars are permitted to run freely and uncontrolled with little noise and without any safety or warning devices thereon. The railroad company contends there was no duty upon it to fence the yards and that it was not required as a legal duty to anticipate the presence of the child on the track; also, that there is no element of negligence in gravity switching in its own private yards. It is quite familiar law that conduct which may be free from negligence where a normal adult is affected may be culpable negligence where it is an infant who has not reached the age of discretion. Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S.W. 199.

■ We may suppose that a person capable of contributory negligence who trespassed upon these tracks would ordinarily be barred from recovering damages for resulting injury. See Annotation, 47 A.L.R. 863. But we are concerned here with an infant completely incapable of discretion and wholly irresponsible for his own act. Generally, the doctrine of nonliability for injuries to trespassers applies to infants. Gray v. Golden, 301 Ky. 477, 192 S.W.2d 371. However, there are exceptions to this doctrine, namely, (1) where liability may be imposed under the law of attractive nuisance, and (2) where one maintains on his premises "something dangerous to children and so exposed that there is likelihood of their coming in contact with and being injured by it." Liability under this latter exception rests upon reasonable anticipation that children might be exposed to danger, and the duty to take precautions against their going on the premises. It is under this concept of legal duty that the present case rests. As stated in 65 C.J.S., Negligence, § 28, "When the owner knows or should know that children are likely to trespass on a part of his land on which he maintains a condition which is likely to be dangerous to them, he may be held liable for harm resulting to them therefrom, especially where adequate safeguards may be provided at a comparatively small cost and without impairing the utility of the instrumentality or condition. However, he is not required to provide against remote or improbable injuries."

■ There is some distinction between the second rule of exception and the first. It has been called an intermediate rule as between attractive nuisance and conventional liability to a trespasser, but it has been regarded by this court as an extension of the attractive nuisance doctrine. Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S.W. 519, 521. The distinction in duty rests on the proposition: "If the place or appliance cannot be said to possess a quality calculated to attract children generally, it must be shown that to the defendant's knowledge the injured child or others were in the habit of using it." 38 Am.Jur., Negligence, Sec. 145. As in the law of negligence generally, legal duty in respect to action or nonaction generally in man's relation to other persons—pertinently in the use of property—is proportioned to the magnitude of peril to be reasonably ap-

prehended from an act or an omission. Foresight or reasonable anticipation is the standard of diligence, and precaution a duty where there is reason for apprehension. Knowledge of the presence of children in or near a dangerous situation is of material significance. Shearman and Redfield on Negligence, Sec. 24.

In the case at bar, the proven negligence, if any, is in failing to use reasonable care or diligence to maintain some safeguard against immature children going on dangerous premises where it might reasonably have been anticipated they would go and be hurt.

Illustrative of the application of the second principle of exception are cases where a person places explosives accessible to children of tender years, such as Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S.W.2d 373; and Miller v. Chandler, 168 Ky. 606, 182 S.W. 833, 834, in which it is said:

"Appellee at the time was only 8 years of age, and the fact that appellant warned him of the danger cannot relieve him of liability. If relieved of the liability, it must be because he used ordinary care to put these explosives out of the reach of appellee and other children, and not from any warning given."

Perhaps closer in point of exemplification of the principle is Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S.W. 519, 520. Little children had been in the habit of playing under shade trees at the base of a steep hill on the coal company's land near their homes. An employee rolled or let roll a large rock down the hill. One of the children below was killed by it. Judgment on a directed verdict for the defendant was reversed upon the broad principle of negligence stated in Sutherland on Damages, Vol. 1, Sec. 16, that, " 'All persons are imperatively required to foresee what will be the natural consequences of their acts, and omissions, according to the usual course of nature and the general experience.' "

The court expressed the opinion that the general rule with respect to the negative duty owed a trespasser only where his peril is discovered "should not, we think, be extended to embrace a state of case in which the owner is under a duty to anticipate the presence of the intruding children at the time and place where the accident happens." Taking note of the proof of knowledge of the custom of the children, it was observed that "in a sense they were technical trespassers" since they had not been invited or given express permission to be on the premises. The opinion continues:

"But if a person knows that young children are in the habit of playing on his premises, and has notice or warning that they are liable to be hurt by his method of doing business, we think it is incumbent upon the property owner to admonish the parents of the children to keep them off his premises or to take ordinary care not to harm them, even though they may not be there by his express invitation or consent.

"Under conditions like this it would be cruel in the extreme to treat little children like adults, and to regulate the duty of the landowner to them by the spirit of indifference that might with much propriety be adopted in dealing with persons of mature years who not only knew they were trespassers, but knew how to take care of themselves. The property owner may not be obliged to keep his eyes open to discover the presence of children on his premises, but, when he does discover them habitually intruding at a place that is unsafe for children, the plainest dictates of humanity require that he should do something or say something to save them from probable injury or death."

It is laid down in Shearman & Redfield on Negligence, Sec. 476, upon authority of Missouri and Michigan cases, that "a child straying upon a railroad track where it crosses a street or is unlawfully left unfenced is not a trespasser."

In Harris v. Indiana General Service Co., 206 Ind. 351, 189 N.E. 410, 413, an eighteen year old deaf-mute with the mental development of a six year old child, regarded as accountable only for that degree of care of a child without judgment or discretion, was injured by going upon a high-tension electric tower. One of the grounds of negligence alleged was failure of the defendant to guard the tower so as to prevent children and youths from climbing thereon. In holding that the petition stated actionable negligence, the court accepted the following in 1 Thompson on Negligence, p. 944, as being a correct statement of the law:

" 'Although the dangerous thing may not be what is termed an attractive nuisance,—that is to say, may not have an especial attraction for children by reason of their childish instincts,—yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them.' "

The court stated that while the boy might have been guilty of technical trespass, yet, under the facts alleged, the defendant was not relieved from the duty of using reasonable care to protect or guard the dangerous tower. Continuing, " * * * where defendant could have reasonably anticipated that children or other persons might come into contact therewith, and when such a contact was reasonably sure to inflict serious injury in such event, a duty thereby devolved upon appellee to take whatever steps were reasonably necessary to prevent injury to those that were likely to come in contact with the dangerous instrument."

In Cleveland, C., C. & St. L. Ry. Co. v. Means, 59 Ind.App. 383, 104 N.E. 785, 793, 108 N.E. 375, in affirming a judgment for the death of a five year old child who had followed other children out of a neighborhood park in a thickly populated part of a city within 75 feet of a railroad switch where it crossed a street, the court stated:

"Constructive knowledge on the part of a railroad company that children non sui juris are on its tracks, or probably will be on its tracks at a particular place, of necessity carries with it knowledge of the peril and helpless condition of such children, and hence the vigilance or care, which in the first instance was only negative in character, may become affirmative in the second instance and require that the company in such case shall, in some degree at least, exercise for the child the care and vigilance which it must know the child is unable to exercise for itself, and must not, by an affirmative act of omission or commission, expose such child to a danger which it knows, or has reason to believe, is unknown to and not understood or appreciated by such child."

The appellee maintains that there was no duty resting upon it to fence its switch-yard. Chapter 256, Kentucky Revised Statutes, covers the subject of division fences, and KRS 256.110 places railroad companies on equal terms and obligations as natural persons except under certain specific conditions. One is that a railroad company is not required to build a fence along its line through a town or city or across any public or private passway. KRS 256.160(3). Jackson's Adm'r v. Louisville & N. R. R. Co., 46 S.W. 5, 20 Ky.Law Rep. 309, 6, was an action for damages for death of an intelligent seven year old boy in a switchyard. He had been frequently warned of the danger of going into the yard. We held there was no duty on the railroad company to enclose its yard by a fence in order to keep trespassers off. It does not appear where or how the boy and his companion had gone into the yards. We said, in conclusion, "It seems appellee did all that reason would require to keep trespassers out of its yards, by keeping a watchman, whom decedent was avoiding when he was killed." The decision rests on

the view that under the particular circumstances maintaining a watchman was sufficient as reasonable care.

■ The exception of the statutory obligation that does not require a fence across a public or private passway would seem to mean where such way passes over the tracks and does not terminate at the railroad. See Annotation, "Duty of railroad to fence tracks within limits of municipality", 16 A.L.R. 983. But even if this exception be regarded as without this qualification, the fact that fencing a switchyard under ordinary conditions is not required as a statutory duty does not absolve the railroad company from an act of diligence and care imposed by the common law under the circumstances of the particular case. Shearman & Redfield on Negligence, Sec. 454.

The railroad company cannot claim absolute immunity from liability in the instant case on the ground that if there had been a proper barrier at the end of the street or other precautions taken to prevent little children from straying into the switchyards, this child might have somehow gone around or through the barrier or fence. In Mc-Millin's Adm'r v. Bourbon Stockyards Co., 179 Ky. 140, 200 S.W. 328, L.R.A.1918C, 682, where the stockyards company had enclosed its premises by a fence, so constructed as to prevent children from climbing over it and going on its premises, we held it had performed its legal duty even though it knew that boys had frequently trespassed thereon, and that there was no liability for the death of a six year old boy who, with his companions, had gone a round-about-way through an open gate and fallen into a pit of poisonous cattle dip or disinfectant. We held that the company had met its duty of exercising reasonable care. We repeat, for emphasis, that in the instant case there was no sort of barrier at the end of the street.

We may accede to appellee's argument that gravity switching in railroad yards is not per se negligent operation as to a trespasser or where the public is not to be expected. McDermott v. Kentucky Central Railway Co., 93 Ky. 408, 20 S.W. 380, 14 K.L.R. 437; 44 Am.Jur., Railroads, Sec. 454. In the instant case this factor is material only as adding to the peril to a child who might stray onto the premises.

We recapitulate the proof which tends to support the plaintiff's cause of action:

A large switchyard, with constant moving of cars unattached and unattended and quite noiseless, bisecting a street in a thickly populated community. An open, unobstructed end of the street with 35 to 40 children living within the short block. A toddling child living right at the unprotected entrance to the yard, a few feet from the tracks. A path across the yard habitually used. The frequent presence of children in the yard. Knowledge of the railroad employees of the situation and conditions. No sort of fence or barrier at the end of the street or other facilities to safeguard the children except to occasionally run them off when they happen to be seen among the tracks. A little child straying from the unprotected street end into the tremendous hazard and being horribly injured.

■ We think it was the province of the jury to consider the special conditions and circumstances of the case and to determine whether the railroad company had failed to perform a legal duty, and the child's injury was the proximate result.

■ It seems to us the case should have been submitted by an instruction which regarded as a matter of law the switchyard as an inherent peril to a little child and left to the jury to decide issues (1) of knowledge, actual or constructive, of the presence of persons in the yard, especially children, sufficient to impose a duty of reasonable anticipation of the child at the time and place of the accident; and (2) whether the defendant failed to exercise ordinary care and diligence to use such means and facilities or reasonable precaution as would reasonably protect and safeguard children of tender years from going upon the tracks, and that the plaintiff's injury was the proximate result thereof. Of

course, an appropriate definition of ordinary care and diligence or reasonable precaution as related to children of tender years should also be given in case there is another trial.

Accordingly, the judgment is reversed for consistent proceedings.

STEWART, C. J., and SIMS and CAM-MACK, JJ., dissent.

SIMS, Judge (dissenting).

The majority opinion is so divergent from my idea of the law and the question is of such importance, that I feel impelled to dissent.

As I read the majority opinion it does not hold the switchyard to be an attractive nuisance. Nor does it hold the company was guilty of negligence in the manner in which it switched its cars by gravity. Rather it adjudges the switchyard is a dangerous place and it was the duty of the company to fence this large yard on its east side because for some reason it had fenced same on the west side; or at least, it was the company's duty to put a fence or barrier at the end of Rowan Street because some 40 children lived on that street within a square of the switchyard. Yet, the majority opinion cites two sections of Chapter 256 of KRS to the effect that a railroad company is not required to fence its right of way in a town or city or across a private pathway. Appellee's brief cites many authorites to the effect that there is no duty on the company to fence its switchyard, among them being our case of Jackson's Adm'r v. Louisville & N. R. Co., 46 S.W. 5, 20 Ky.Law Rep. 309.

Rowan Street "dead ends" some 15 or 20 feet from the company's right of way. Patently, a barrier the width of Rowan Street and even constructed so children could not get through it would not be effective as children could, and would, walk around the barrier. There could be but one way to protect this large switchyard from trespassing children living on Rowan Street, and that would be to fence the entire east side of it. But as just stated, the law imposes no such duty on the railroad.

The record does not show children customarily played in the switchyard. On the contrary, it shows that when they were seen in it they were run out. The record shows the company employed 9 patrolmen, 3 on each shift, to keep trespassers out. The fact that workmen parked their cars in the "dead end" of Rowan Street and walked across the switchyard is no evidence that the company permitted children, and especially children 2½ years of age, to walk across the switchyard. Certainly, the company could not anticipate a tottling child of 2½ years would stray onto its property following a dog.

It is rare in this day and time that a child of such tender years ever appears alone on a public street or sidewalk, and it is difficult for me to conceive that the company owed a duty to protect its switchyard from trespassing children of such an age where it reasonably could not be anticipated a child so young would be on the street unattended by a person of discreet years.

Although this child was very young, yet it was a trespasser on the company's property. As we said in Jones v. L. & N. R. Co., 297 Ky. 197, 179 S.W.2d 874, 877, 152 A.L. R. 1259: "Trespassing children occupy the same attitude as a trespassing adult, except for the special liability imposed under the attractive nuisance theory, and the rule is that the owner is only liable for negligence after discovering his peril." See 65 C.J.S., Negligence, § 27, p. 450. As just stated, the company was not required to anticipate the presence of this little boy in its switchyard. 75 C.J.S., Railroads, § 900, p. 280; Louisville & N. R. Co. v. Arrowood's Adm'r, 280 Ky. 658, 134 S.W.2d 224. Nor was the company negligent in using "gravity switching" in its own yard. Louisville & N. R. Co. v. Hocker, 111 Ky. 707, 64 S.W. 638 (petition for rehearing overruled 111 Ky. 707, 65 S.W.2d 119). Hence, there can be no liability upon the company unless its switchyard is an attractive nuisance, and the majority opinion readily admits it is not.

The facts in the instant case cannot be distinguished from McClelland v. Baltimore

& O. C. T. R. Co., 7 Cir., 123 F.2d 734, 738. There, the court said whether any duty of lookout or warning was owed the plaintiff (a child eleven years old) was a question of law for the court, while the question of whether such duty, if any, was properly performed would be a question of fact for the jury. The court there said, "That being the case, the trial court should have ruled as a matter of law that appellant had violated no duty with respect to appellee, and should have directed a verdict in appellant's favor. We think the record clearly shows that it would impose an unreasonable burden upon appellant to require it to employ sufficient patrolmen or additional crew members to provide adequately against such accidents as occurred here." Also, the instant case is much like Smalley v. Rio Grande Western Ry. Co., 34 Utah 423, 98 P. 311, and Radenhausen v. Chicago R. I. & P. Ry. Co., 205 Iowa 547, 218 N.W. 316, in neither of which was the child allowed to recover.

Also, I see much similarity between the case at bar and our own case of Jarvis v. Howard, 310 Ky. 38, 219 S.W.2d 958, where a child was injured in jumping from a coal ramp to a railroad car, and we held the owner of the ramp was not liable to the injured child as he had used ordinary care to prevent children from playing thereon, which is all that is required of the owner or the operator of an attractive nuisance. If this is the extent of the duty required of the owner of an attractive nuisance to protect children, certainly the owner of a dangerous railroad yard would have no higher or greater duty. Here, the railroad employed 9 men to patrol these yards and as there is no evidence it had any knowledge of 2½ year old children straying into its yard, it can hardly be said the company did not use ordinary care to keep children from wandering on its tracks.

Without taking the time and space necessary to discuss the authorities cited in the majority opinion, it seems to me it will suffice to say that none of them have any particular application to the case at bar because none of them deals with a child so young that it could not be anticipated by a reasonable person such a child would be on a street or sidewalk unattended, much less that it would be alone in a metropolitan switchyard where 1000 cars a day are moved. The law imposed no duty on the company to be a nursemaid to all small children on Rowan Street, who, if they are not watched and attended by parents or some person of mature years having them in charge, might in their guilelessness ramble into this switchyard.

Had this unfortunate child aimlessly walked into the switchyard, stumbled over a cross tie and struck its head on a steel rail, inflicting a severe and permanent brain injury, would the company have been liable for not protecting its yard against such trespassing child? I think not, because no reasonable person would anticipate a child of that age would be turned loose alone or subjected to such indifferent attention as to let it escape parental care when it lived only a few feet from this large and busy switchyard.

I can see no negligence on the part of the company which caused this distressing accident to this unfortunate little boy and I feel the trial judge correctly directed a verdict for the company. For this reason I respectfully dissent, and am authorized to say STEWART, C. J., and CAMMACK, J., join me