**CLOVER FORK COAL COMPANY,
Appellant,**

v.

**Grant DANIELS, Guardian for and on Behalf of Danny Lee Daniels, an Infant,
Appellee.**

Court of Appeals of Kentucky.

June 24, 1960.

As Modified on Denial of Rehearing
Dec. 2, 1960.

Dissenting Opinion Filed Dec. 2, 1960.

James Sampson, William A. Rice, Harlan, for appellant.

Helton & Golden, Pineville, H. M. Brock & Sons, Harlan, for appellee.

CLAY, Commissioner.

The appellee plaintiff, an infant seven years of age, was seriously injured on a moving conveyor belt operated by defendant appellant. The jury awarded plaintiff $50,000.

Defendant is a coal operator. On its premises is a lengthy conveyor belt for transporting coal from a bin to a tipple. One end of this belt line is housed in a sheet iron structure at the bottom of a hollow, approximately 10 feet from a private roadway. The lower part of this housing was open on two sides, exposing the roller and belt. Without difficulty a person could enter the housing.

That is exactly what the plaintiff did. Playing "Cowboy and Indians", he went in the opening and climbed up on the conveyor belt, which was not in operation at the time. While he was in this position, the machinery was started from the top of the hill and plaintiff was carried into a hopper where he was severely battered.

Defendant raises a question about variance between pleading and proof which we do not consider significant. The basic issue presented by the complaint and vigorously tried was whether or not the defendant negligently maintained a dangerous instrumentality. This involves principles stemming from the "attractive nuisance" doctrine.

Defendant contends it was entitled to a directed verdict under the law as laid down in Teagarden v. Russell's Adm'x, 306 Ky. 528, 207 S.W.2d 18. In that case a boy had climbed to the top of a gondola railroad car loaded with gravel. When the hopper at the bottom of the car was opened for unloading, he was dragged downward and killed. We held the gondola car was not an attractive nuisance and defendant was not negligent in failing to anticipate an accident of this nature.

The plaintiff relies upon the case of Kentucky and Indiana Terminal Railroad Company v. Mann, Ky., 290 S.W.2d 820; 312 S.W.2d 451 (two opinions). In that case a very young child strayed into defendant's railroad yard and was run over by a shunted tank car. We held that the question should be submitted to the jury as to whether or not the defendant was negligent in maintaining a dangerous instrumentality so exposed that the defendant could reasonably anticipate that it would cause injury to children. In that case, as in the more recent case of Goben v. Sidney Winer Company, Ky., —— S.W.2d ——, the emphasis has been shifted from the attractiveness of the instrumentality to its latent danger when the presence of trespassing children should be anticipated.

The applicable rule may thus be stated: where one maintains on his premises a latently dangerous instrumentality which is so exposed that he may reasonably anticipate an injury to a trespassing child, he may be found negligent in failing to provide reasonable safeguards. See Restatement of the Law of Torts, Vol. 2, Section 339 (page 920); 65 C.J.S. Negligence § 28, page 453; and 1 Thompson on Negligence, Section 1030 (page 944). Within the framework of this rule the Teagarden decision (Teagarden v. Russell's Adm'x, 306 Ky. 528, 207 S.W.2d 18) was justified on the grounds (1) the danger was not so exposed as to present the likelihood of injury, and (2) the defendant could not reasonably anticipate the presence of children on this car at the time of the accident. Those factors distinguish the Teagarden case from the present one. Our factual situation more closely approaches that in the Mann case (Kentucky and Indiana Terminal Railroad Company v. Mann, Ky., 290 S.W.2d 820; 312 S.W.2d 451).

It seems indisputable that the conveyor belt, exposed and unprotected, constituted a latent danger. Defendant's counsel does not otherwise contend. (The briefs for both parties were exceptional.) His principal argument on this point is that the evidence failed to establish that children *habitually* played near the housing where

the injury occurred, so defendant could not anticipate an injury.

There was substantial evidence that children often had been seen near the conveyor belt. It is insisted, however, that the area sometimes frequented by them was 175 feet up the hill from the point where the plaintiff was injured. (A supply track crosses the belt line at this point.) However there was evidence that children occasionally had been seen playing near the housing at the bottom of the hill. Only one witness testified he had ever seen a child on the belt in the housing.

We may accept defendant's contention that the evidence failed to show many children often played around the point of the accident. Yet defendant's own witnesses clearly established that they could be anticipated at various places near the conveyor belt and defendant constantly tried to keep them away from other parts of the premises where they might be exposed to danger.

There is no requirement of the law that before the doctrine of dangerous instrumentality may be applied children must be shown habitually to have been present at the exact point of danger. If children are known to visit the general vicinity of the instrumentality, then the owner of the premises may reasonably anticipate that one of them will find his way to the exposed danger.

Defendant's insistence upon the requirement that plaintiff must prove a habit of children to frequent the housing is predicated on the assumption that the dangerous condition was not attractive to children. It has been said that if the place or appliance does not possess a quality constituted to attract children generally, the owner of the premises may not reasonably anticipate injury unless it is shown that they customarily frequent the vicinity of the danger. 38 Am.Jur., Negligence, Section 145, page 811. This premise may not be invoked here for the reason that the conveyor belt housing did have a quality of attractiveness.

It is difficult to imagine a more enticing hiding place for children, the very purpose for which it was used by the plaintiff when the accident occurred. It was indeed a trap.

The factual situation may be summarized. The machinery at the point of the accident was inherently and latently dangerous to children. It was exposed, was easily accessible from the roadway close by, and was unguarded. It possessed an element of attractiveness as a hiding place and as a device upon which children might play. While children may not have frequently congregated about this particular place, the defendant knew that children often invaded its premises in the general vicinity.

Under such conditions, the question is whether or not defendant was negligent in failing to reasonably safeguard the machinery at this point. (The record shows it could have been done at a minimum expense.) It is not our province to decide this question. Certainly we cannot say as a matter of law that reasonable minds must find the defendant free of negligence. The issue was properly submitted to the jury.

■ The defendant earnestly argues that since the instruction given required the jury to find a "habit" of children to play upon and around the belt and machinery at the point of the accident, it could not properly return a verdict for plaintiff under this instruction because this "habit" was not sufficiently shown. There are three answers to this contention: (1) the language of the instruction did not limit the habitual use to the precise place of the accident, (2) the instruction was more favorable to the defendant than the law requires because of the attractiveness of the instrumentality, and (3) the jury could not have been misled concerning the essential basis of liability. In view of the principles of law we have discussed in this opinion, we are of the opinion this instruction fairly presented the issue of negligence (although it might properly have been differently worded), and we cannot find it was prejudicially erroneous.

The remaining contention of defendant is that the award of $50,000 damages was grossly excessive, particularly since there was no evidence to justify an allowance for permanent loss of earning power. It is unnecessary to detail the extensive medical evidence regarding the plaintiff's injuries. That he was seriously injured no one can question. His skull was partially crushed and it is remarkable that he survived. Four very serious operations were necessary to repair the skull damage, which included transplanting parts of his ribs by bone graft and taking skin from other parts of his body. There was a long period of pain and suffering.

The plaintiff was, to a substantial degree, made whole again. Defendant insists that the only permanent aspects of the injury are the cosmetic features. The plaintiff's head has permanent scars and depressions in the skull and hair will not grow in certain places. He will carry the unattractive imprint of this injury the rest of his life. An adverse psychological effect reasonably may be inferred.

It is true we cannot know how this injury may affect his earning ability. It is not unreasonable, however, to find that its permanent aspects justify an award of damages based on a loss of potential earning capacity and the effect of disfigurement upon his future life. See J. C. Penney Company v. Livingston, Ky., 271 S.W.2d 906.

This is a large verdict. In view of the seriousness of the injury, however, it does not strike us at first blush as being the result of passion and prejudice.

The judgment is affirmed.

STEWART, J., dissenting.

STEWART, Judge (dissenting).

I dissent from the opinion upon the broad ground that it departs from the established law of this state and, in effect, makes a possessor of property an insurer of the safety of children trespassing anywhere and everywhere on industrial premises, if there is slight evidence that a child had once been seen near the place of his injury.

The Mann case, on which this opinion rests (first appeal, Mann v. Kentucky & Indiana Terminal R. R. Co., Ky., 290 S.W.2d 820, and second appeal, Kentucky & Indiana Terminal R. R. Co. v. Mann, Ky., 312 S.W.2d 451), presented facts materially different from those set forth in the instant case. In that case the terminal tracks of a railroad bisected a public street in Louisville which was unfenced; switching operations were going on continually on the tracks; and many persons crossed over the tracks to reach the other end of the street. A number of children lived on streets that opened on the tracks. A small child strayed from one of these open streets onto the tracks and was injured by a shunted boxcar. In the Mann case there was accessibility to a place of danger and there had been frequency of use of this place in the past, and obviously it could reasonably be anticipated that children might extend their play activity out on the tracks and one or more of them would be injured.

In the case at bar we have conveying machinery completely covered and protected except at the side near the lower end. The uncovered part, or hole, was obstructed by a wall of crossties. A child went into that hole to hide from his playmates. At the upper or covered end of the conveyor belt housing there was a roadway where it could well be said the presence of boys and other people should have been anticipated, but that cannot be said of the lower end. The belt in the housing extended down rugged terrain which was overgrown with brush. The mining company had a private supply roadway near the lower end of the belt, which was used by employees when the mine was operating and occasionally by non-employees as trespassers.

I cannot agree that this situation presented a latently dangerous place so exposed

that a trespassing child might reasonably have been expected to enter. There was evidence, as the opinion states, that children had often been seen on the hill near the upper end of the conveyor belt housing. Adults also traveled along there and occasionally picked up coal at the tipple for their families after working hours. But this was 175 feet above the other end where this child crawled into the opening. The opinion states that "children occasionally had been seen playing near the housing at the bottom of the hill," but that only one witness testified he had once seen a child on the belt in the housing. The machinery was operated from a point at the top of the structure, and the operator could not see the lower end at the bottom of the hill.

I take exception to this statement of the law contained in the opinion: "There is no requirement of the law that before the doctrine of dangerous instrumentality may be applied children must be shown habitually to have been present at the exact point of danger. If children are known to visit the *general vicinity* of the instrumentality, then the owner of the premises may reasonably anticipate that one of them will find his way to the exposed danger."

That certainly cannot be said to be the law as laid down in the Mann case. The words, "general vicinity," cover the entire premises, and that connotation embraces too much territory. I do not regard this statement as being in accord with the principles recited in the Restatement of Law of Torts, Vol. 2, sec. 339, pp. 920–921, with respect to artificial conditions highly dangerous to trespassing children. This section is quoted in full in Fourseam Coal Corp. v. Greer, Ky., 282 S.W.2d 129. It is to be noticed that the several clauses with respect to liability of the possessor of land are cumulative, being connected by "and." Clause (a) states that "the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, * *."

There is no evidence in this case that defendant knew, or should have known, that trespassing children were *likely to be upon this part* of its premises, or that it realized, or should have realized, that the opening in the housing of the conveyor belt at this place involved reasonable risk of harm to children.

Defendant's operation was not in a populated area, as was the situation in the Mann case. Only three families lived up the hollow above the conveyor, and it was not necessary that the miners using this lower roadway should go past the conveyor opening. In the first Mann opinion, 290 S.W.2d 820, 823, in support of the decision of this Court to impose liability there for maintaining a dangerous condition, the opinion relies upon this statement from 38 Am.Jur., Negligence, sec. 145, p. 811, namely, that, in the absence of an attractive nuisance, "it must be shown that to the defendant's knowledge the injured child or others were *in the habit* of using it (the place)"; and at page 824 of Shearman and Redfield on Negligence, sec. 24, this quotation appears:

> "Foresight or reasonable anticipation is the standard of diligence, and precaution a duty where there is reason for apprehension. Knowledge of the presence of children in or near a dangerous situation is of material significance."

In Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S.W. 519, also cited in support of the Mann opinion, liability was based upon knowledge of a "habit" of children to play at the location where the injury was sustained. It is such a fact and the imputed knowledge therefrom which give rise to foreseeability or anticipation. It follows that the absence of knowledge of such a habit relieves a party of the duty to anticipate or foresee the presence of reckless or careless trespassers in a place of danger.

If children ever played at the place near the lower end of the conveyor, the instances were extremely infrequent. The opinion refers to this indefinite evidence as showing their playing there to have been "oc-

casionally." The term "habitually," used in defining imputed knowledge, means more than that. It means usually or customarily or enough to put a party on guard.

But in this case it was not merely the presence of children on the premises or the inherent character of the place that may have given rise to imputed knowledge. The recently developed doctrine of liability for injuries to young children trespassing upon property is applicable, as stated in the opinion, to a "dangerous instrumentality." Of course, a place may well be in and of itself a dangerous place (as in the Mann case), but here the instrument was conveying machinery. This child was playing on the apparatus, or "dangerous instrumentality," and going into an opening in the housing in order to hide. There is no evidence whatsoever of any knowledge, on the part of defendant's employees, actual or imputed, of a habit of children to do that. The particular rule of foreseeability in a case like this is thus stated in 38 Am.Jur., Negligence, sec. 145, p. 811:

"Knowledge of the presence of children is shown by proof that children were in the habit of playing on or about the offending appliance or place."

The opinion undertakes to distinguish Teagarden v. Russell's Adm'x, 306 Ky. 528, 207 S.W.2d 18. The facts of that case were that a railroad gondola car of gravel was being unloaded by opening the hopper and dropping the gravel onto a conveyor belt which carried and dumped it into trucks. A ten-year-old boy, who lived across the road, climbed into the car and could not be seen by the man unloading it. When the hopper was opened and the conveyor started, the boy was carried down with the gravel onto the conveyor and was killed. This Court rejected the attractive nuisance theory of liability, which was sought to be applied in that case. It was shown that children passing along the road to and from school had often stopped and watched the dumping operation and, under instructions to keep children away from this location, the operator had told them to leave on these occasions. It was also shown that children had played on the conveyor belt after working hours.

The opinion in this case undertakes to distinguish the Teagarden case on the ground that the danger to the boy who was killed was not so exposed as to furnish a likelihood of injury and that the presence of children could not be reasonably anticipated at the time and place. It was also held there that the operator owed no duty to look into the car to discover the presence of any one before starting the machinery. I think that case is much in point here, and it seems to me the reasoning that governed its decision applies to the instant case.

The instructions in this case predicated liability upon a ground that is different from that upon which the judgment is affirmed. The instruction (which was that offered by plaintiff) required the jury to believe that before the accident "young children were in the habit of playing and congregating *upon* and around said belt and machinery." Objection was made thereto upon the specific ground that there was no evidence showing any children were in the habit of playing *upon* the belt. The opinion practically concedes the soundness of the objection but places defendant's liability upon the conclusion that children were "known to visit the *general vicinity* of the instrumentality."

It is being held that this instruction was not misleading and was more favorable to defendant than the law required. I readily agree, as a general proposition, that an appellant will not be heard to complain of an instruction which is more favorable to him than one to which he is entitled. However, " * * * an instruction may be so erroneous on its face as to indicate its prejudicial effect regardless of the evidence. Generally an error in the instructions is presumptively prejudicial." Stanley's Instructions to Juries, sec. 44, p. 73.

It is the right of parties to lawsuits to have the court present the proper theories

of liability by correct instructions and it is the manifest duty of the court to do so. It is elementary that a jury is bound to accept and apply the law of the given instructions, whether right or wrong. Here, the jury passed upon the case under the wrong law, and it is fundamental that a jury should be required to decide the facts according to the true law applicable. An instruction not sustained or supported by the evidence should not be given; and, if given, it is erroneous.

More than that, the jury ignored even the law given for their guidance in this case; for their verdict is contrary to the instruction submitted since there was no evidence that children habitually played on the dangerous instrumentality, or even around it.

In my opinion there has been a miscarriage of justice in this case. I would reverse the judgment.

I am authorized to state that MONTGOMERY, J., joins me in this dissent.